Sylvia **SHIRLEY**, Individually and on behalf of her minor children, Tammy Lynn, and Lisa Marie, and on behalf of all others similarly situated, et al., Plaintiffs,

v.

Abe **LAVINE**, Commissioner of the Department of Social Services of the State of New York, et al., Defendants.

No. 72–CV–163.

United States District Court,
N. D. New York.

Sept. 26, 1973.

Onondaga Neighborhood Legal Services, Syracuse, N. Y., for plaintiffs; Douglas A. Eldridge, Syracuse, N. Y., of counsel.

Louis J. Lefkowitz, Atty. Gen., Albany, N. Y., for defendant Abe Lavine, Ruth Kessler Toch, Sol. Gen., Alan W. Rubenstein, Principal Atty., Albany, N. Y., of counsel.

John B. LaParo, Welfare Atty., Onondaga County Dept. of Social Services, Syracuse, N. Y., for defendant Lascaris, James H. Hughes, Asst. Welfare Atty., Syracuse, N. Y., of counsel.

Before MANSFIELD, Circuit Judge, and FOLEY and PORT, District Judges.

PORT, District Judge.

### Memorandum-Decision and Order

The Supreme Court vacated a judgment of this court [1] which declared 18 NYCRR § 369.2(f) (3) (ii) (e) [2] invalid

---

1. Lavine v. Shirley, 409 U.S. 1052, 93 S.Ct. 555, 34 L.Ed.2d 506 (1972).

2. 18 NYCRR § 369.2(f)(3)(ii)(e) was the implementing regulation to Social Services Law § 101–a before the 1972 amendment, and provided as follows:

(e) *Abandonment or desertion.* (1) All situations in which a parent is absent from the home and failing to comply with a court order for support, or to fully support without court order, shall be classified as abandonment or desertion, and referred to the law enforcement officer in accordance with department regulations.

(2) A parent or other relative applying for or in receipt of an ADC grant for a child who has been deserted or abandoned shall be informed that a report of the desertion or abandonment will be made to the law enforcement official within 30 days of such occurrence or of the initial granting of assistance.

(3) A parent or other relative shall be required to furnish pertinent information in

the location and prosecution of a deserting or abandoning parent.

(4) A parent or other relative who fails to cooperate with the social services official in the location and prosecution of the deserting or abandoning parent shall be ineligible for public assistance; and such failure to cooperate shall, in appropriate cases, be brought to the attention of the Family Court for whatever action the court may wish to take under such circumstances; such person's needs shall be excluded from consideration and the needs of the remaining family members shall be met in accordance with Part 352 of this Title; except that, if there is no other eligible relative in the home, such needs of the remaining family members shall be met as a protective payment in accordance with Part 381 of this Title.

(5) The agency shall fully utilize the services of the department's bureau of registry and location of deserting parents in its efforts to locate the missing parent.

as establishing AFDC eligibility requirements in conflict with provisions of the Social Security Act, and remanded the case to this court for further consideration in light of Chapter 687 of the 1972 Laws of New York (New York Social Services Law § 101–a, as amended),[3] McKinney's Consol.Laws. c. 55 which had become effective subsequent to this court's decision.

In order to reactivate the matter in the district court after the remand, plaintiffs' attorney obtained an order requiring the defendants to show cause why the three judge court should not be reconvened to reconsider its decision in light of the amendment to § 101–a. Motions were also made for leave to file an amended complaint to squarely put the provisions of the amended section in issue, and for leave for Anna Stuck to intervene as plaintiff. The motions were granted.

Defendants have moved to dismiss the amended complaint. Affidavits and other matters outside the pleadings having been presented, those motions shall be treated as motions for summary judgment. Rule 12(b), F.R.Civ.P.

3. Section 101–a of the New York Social Services Law was amended by Chapter 687, Section 1, of the 1972 Laws of New York. Section 101–a, as amended, provides as follows:

§ 101–a. Proceedings to compel support by persons in need thereof

1. A recipient of public assistance or care or a person liable to become in need thereof may bring proceedings in a court of competent jurisdiction against any person responsible for his or her support as provided in section one hundred one of this chapter to compel any such person so responsible to provide for or contribute to such support.

2. An applicant or recipient of public assistance who is the parent of a child or minor shall assist and cooperate with the social services official and appropriate authorities to obtain support or contributions to support for such child or spouse from the other parent or spouse by:

(a) Furnishing the social services official with appropriate information including the location of the other parent or spouse.

(b) Filing a petition and furnishing evidence in a proceeding for the establishment

## AMENDED COMPLAINT

The amended complaint does not reallege the facts concerning the original named plaintiffs. This omission was by design since they no longer feel themselves aggrieved due to intervening events. In its present posture, then, this is an action by Anna Stuck on behalf of herself, her minor children, and all others similarly situated, seeking declaratory and injunctive relief from enforcement against them of § 101–a of the New York Social Services Law because of their failure to cooperate in support proceedings as required by the section, and seeking as well the payment of benefits withheld on authority of the section.

We conclude that, while class action status and retroactive payment of benefits should be denied, the plaintiff is entitled to the declaratory and injunctive relief sought.

## FACTS

The pertinent facts may be stated briefly. Plaintiff Intervenor has four children, aged 12, 9, 8 and 2. The fami-

of the child's paternity and support under article five of the family court act.[1]

(c) Filing a petition and furnishing evidence in a proceeding to secure support for her child and herself under article four of the family court act.[2]

3. In the event an applicant or recipient of public assistance fails to institute a proceeding in accordance with the provisions of this section or other similar provisions of law, the social services official shall institute such proceeding under the appropriate provisions of the family court act and if such applicant or recipient willfully fails or refuses to furnish evidence necessary to support such petition, or furnish information relative to the location of the other parent, the social services official shall not provide or continue to provide assistance or care for the maintenance of such applicant or recipient so long as such applicant or recipient fails to assist or cooperate as required by the provisions of this section or other provisions of law.

Prior to the amendment, § 101–a contained only the language now in subparagraph 1.

ly has received AFDC for some time. On January 17, 1973, she applied for re-certification. This caused the agency to discover that there was no support order outstanding for the youngest illegiti-mate child. Plaintiff indicated that she did not desire that a paternity action be brought against the putative father.

She refused to cooperate in connection with such an action beyond stating the name of the putative father and the town where he lived, asserting he was unable to support the child because of physical disabilities. Her refusal was also based on unpleasantness in connec-tion with similar proceedings brought against the father of her three other children.

After a fair hearing, the family's grant was reduced on the authority of § 101–a to reflect the exclusion therefrom of the plaintiff for her failure to cooper-ate. According to respective counsel, the reduction was between $75 and $100 per month. The Anna Stuck family, apart from § 101–a, is otherwise eligible for full assistance.

## DISCUSSION

■ Plaintiffs, invoking our jurisdic-tion pursuant to 28 U.S.C. § 1343(3), (4) and 28 U.S.C. § 1331, have raised a substantial question with respect to the constitutionality of New York Social Services Law § 101–a, as amended, which warranted the convening of a three-judge court. King v. Smith, 392 U.S. 309, 312 n. 3, 88 S.Ct. 2128, 20 L. Ed.2d 1118 (1968). However, in view of the fact that plaintiffs also raise an issue as to whether § 101–a violates the Supremacy Clause, which we believe to be dispositive of the case, our decision follows the Supreme Court's repeated direction that in such a case we should adjudicate the statutory claim rather than indulge in a constitutional ruling. See Rosado v. Wyman, 397 U.S. 397, 402, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970);

Harmon v. Brucker, 355 U.S. 579, 581, 78 S.Ct. 433, 2 L.Ed.2d 503 (1958).

Turning to the statutory claim, the Supreme Court's remand requires us to determine whether New York's amend-ment of § 101–a imposes conditions on eligibility for aid to dependent children which are not authorized by the Social Security Act and, more particularly, by the 1967 Amendments to that Act, com-monly referred to as its NOLEO (Notice to Law Enforcement Officers) provisions.[4] The latter require a state administering aid to dependent children to develop and implement, with respect to a child born out of wedlock who re-ceives such aid and who has been desert-ed or abandoned, a program to establish the paternity of the child and to secure support from the deserting parent.

■ Two distinct goals of the Social Security Act's AFDC program are in-volved. Aid to Families with Dependent Children is premised on the fact that when a family is deserted by a parent who fails to fulfill his obligation of sup-port, the family as such requires assist-ance. One of the goals of AFDC is to provide this assistance. An equally de-sirable goal is that the absent parent fulfill his legal obligation to support his child. A goal of the NOLEO provisions was to encourage and facilitate obtain-ing this support. While distinct, these goals are not necessarily conflicting. They become so only when one is pur-sued as the expense of the other.

■ While we are not outraged by nor unsympathetic to New York's effort to compel Anna Stuck to cooperate in a proceeding to compel support for her youngest child to the extent required by § 101–a, we find no authority for en-grafting such a condition on to the Congressionally prescribed initial AFDC eligibility requirements or on to the grounds for discontinuance of benefits.

The authority is contrariwise. Every court that has considered the question of

4. 42 U.S.C. § 602(a)(17).

such conditions .of eligibility has found itself compelled to invalidate them.[5] To argue, as the state does here, that it is only the noncooperating mother who is penalized and not the innocent child or children [6] is unrealistic. The distinction has been consistently rejected by the court.[7] Indeed the House Report (No. 1300) with respect to the 1950 amendment of 42 U.S.C. § 606(b) (70 Stat. 850) recognized the interdependency of provisions for and to the child and its caretaker-mother, stating:

"In the present law, aid to dependent children is defined as payments with respect to a dependent child. No specific provision is made for the need of the parent or other relative with whom the child is living. Particularly, in families with small children, it is necessary for the mother or another adult to be in the home full time to provide proper care and supervision. *Since the person caring for the child must have food, clothing, and other essentials, amounts allotted to the children must be used in part for this purpose if no other provision is made to meet her needs."* (Emphasis supplied.)

■ No one has questioned, nor do we here, that Congress has the power to condition eligibility for assistance upon new and additional requirements.[8] What the cases construing the NOLEO provisions make clear, however, is that in enacting them Congress did not utilize this power.

■ That the State lacks this power is equally well established:

"[I]n the absence of congressional authorization for the exclusion clearly evidenced from the Social Security Act or its legislative history, a state eligibility standard that excludes persons eligible for assistance under federal AFDC standards violates the Social Security Act and is therefore invalid under the Supremacy Clause." [9]

5. *See, e. g.,* Doe v. Shapiro, 302 F.Supp. 761 (D.Conn.1969), app. dis., 396 U.S. 488, 90 S.Ct. 641, 24 L.Ed.2d 677 (1970); Doe v. Swank, 332 F.Supp. 61 (N.D.Ill.), aff'd sub nom. Weaver v. Doe, 404 U.S. 987, 92 S.Ct. 537, 30 L.Ed.2d 539 (1971); Meyers v. Juras, 327 F.Supp. 759 (D.Ore.), aff'd 404 U.S. 803, 92 S.Ct. 91, 30 L.Ed.2d 39 (1971); Taylor v. Martin, 330 F.Supp. 85 (N.D.Cal.), aff'd sub nom. Carleson v. Taylor, 404 U.S. 980, 92 S.Ct. 446, 30 L.Ed.2d 364 (1971); Godfrey v. Stanton, Civil No. 72 F 77 (C.D. Ind. decided June 8, 1973). The recent decision of a three-judge district court in Doe v. Norton, 365 F.Supp. 65 (D.Conn.1973), which upheld the constitutionality of a Connecticut statute obligating a mother to disclose her child's paternity and to prosecute a paternity suit against the putative father, is clearly distinguishable. There the statutory obligation, unlike that in the present case, did not impose an additional condition on eligibility for aid, payment of which continued regardless whether the mother complied with the Connecticut law. Indeed the parties here have recognized the possibility that various New York statutes may be interpreted to permit the New York Social Services Department to institute proceedings to compel a mother to cooperate in establishing paternity without conditioning aid on such cooperation. See Social Services Law §§ 102, 132–a, 144; In re Putnam, 308 N.Y.S. 2d 896 (1970); NYCPLR §§ 3101, 3102, 3126; Schwartz v. Schwartz, 23 App.Div.2d 204, 259 N.Y.S.2d 751 (App.Div. 1st Dept. 1965); Green v. Brown, 65 Misc.2d 226, 317 N.Y.S.2d 104 (Family Court, Westchester County, 1970); N.Y. Judiciary Law, McKinney's Consol.Laws, c. 30 §§ 750, 753, 773, 774. In the event that existing statutes prove to be ineffectual or too cumbersome to achieve the objective, the way is open for the legislature to enact an appropriate law without conditioning continued aid upon such procedure.

6. Three of the children making up the family unit here are not even offspring of the nonsupporting putative father.

7. Doe v. Harder, 310 F.Supp. 302 (D.Conn.), app dis., 399 U.S. 902, 90 S.Ct. 2202, 26 L. Ed.2d 557 (1970); Woods v. Miller, 318 F. Supp. 510 (W.D.Pa.1970); Doe v. Lavine, 347 F.Supp. 357 (S.D.N.Y.1972); Doe v. Gillman, 347 F.Supp. 482 (N.D.Iowa), modified on other grounds, 479 F.2d 646 (8 Cir., decided June 6, 1973).

8. *See,* New York Department of Social Services v. Dublino, 413 U.S. 405, 93 S.Ct. 2507, 37 L.Ed.2d 688 (U.S. June 21, 1973).

9. Townsend v. Swank, 404 U.S. 282, 286, 92 S.Ct. 502, 505, 38 L.Ed.2d 448 (1971).

## EFFECT OF RECENT HEW REGULATION AMENDMENT

The defendants invoke a quite recent amendment to HEW regulations [10] as lending substantial support to the validity of § 101–a, as amended. We have withheld our decision until after its effective date in order to authoritatively consider its effect.

The portion of the amendment permitting denial of assistance to parents or caretakers refusing to cooperate in obtaining support from absent parents was not in the amendment as originally proposed,[11] and was prompted, we are advised by defendant Lavine's counsel, by requests sent by Lavine and others to HEW. The amendment is a departure from the agency's past position.[12] It

10. The change takes the form of an amendment to 45 C.F.R. § 233.90. The amendment and introductory commentary, as set forth in 38 Fed.Reg. 10940 (No. 85, May 3, 1973), are in their entirety as follows:

### Title 45—Public Welfare

### CHAPTER II—SOCIAL AND REHABILITATION SERVICE (ASSISTANCE PROGRAMS), DEPARTMENT OF HEALTH, EDUCATION, AND WELFARE

### PART 233—COVERAGE AND CONDITIONS OF ELIGIBILITY IN FINANCIAL ASSISTANCE PROGRAMS
#### Paternity and Support

Notice of proposed rulemaking for the program of Aid to Families With Dependent Children (AFDC) was published in the Federal Register on December 19, 1972 (37 FR 27637). The proposed regulations related to the U. S. Supreme Court summary affirmance of three cases dealing with refusal of caretaker relatives to cooperate in establishing paternity and securing support for the children.

The major recommendations regarding this proposal were that issuance be delayed until resolution of a related New York case, Lavine v. Shirley, recently remanded by the U. S. Supreme Court; that the uncooperative caretaker be excluded from the grant for the children; and that the regulations not be issued at all.

After consideration of all comments, the regulation is adopted with changes to make clear that AFDC may not be denied to the child, but may be denied to the uncooperative caretaker relative.

Section 233.90, part 233, chapter II, title 45 of the Code of Federal Regulations is amended by adding to paragraph (b) a new subparagraph (4) as set forth below:

§ 233.90 **Factors specific to AFDC.**

  \*   \*   \*   \*   \*

(b) *Condition for plan approval.*—(1) A child may not be denied AFDC either initially or subsequently "because of the conditions of the home in which the child resides", or because the home is considered "unsuitable", unless "provision is otherwise made pursu-

ant to a State statute for adequate care and assistance with respect to such child". (Sec. 404(b) of the Social Security Act.)

(2) \* \* \*

(3) \* \* \*

(4) A child may not be denied AFDC either initially or subsequently because a parent or caretaker relative fails to assist:

(i) In the establishment of paternity of a child born out of wedlock; or

(ii) In seeking support from a person having a legal duty to support the child; But neither this nor any other provision of these regulations should be construed to require that provision be made by a State in its AFDC program for the maintenance of a parent or caretaker who fails to provide such assistance and AFDC may be denied with respect to such parent or caretaker.

  \*    \*    \*    \*    \*

(Sec. 1102, 49 Stat. 647 (U.S.C. 1302).)

*Effective date.*—These regulations in this section shall become effective July 2, 1973.

Dated April 19, 1973.

> Philip J. Rutledge,
> *Acting Administrator,*
> *Social and Rehabilitation Service*

Approved April 30, 1973.

> Frank Carlucci,
> *Acting Secretary.*

[FR Doc. 73–8843 Filed 5–2–73; 8:45 am]

11. As originally proposed in 37 Fed.Reg. 27637 (No. 244, Dec. 19, 1972), the amendment to 45 C.F.R. 233.90 ended with the word "child." in (b)(4)(ii), and it was stated that the proposed amendment required, as a condition for approval of a state plan, that "[t]here may be no denial of assistance because a caretaker relative does not cooperate . . . ."

12. *See, e. g.*, 45 C.F.R. 235.70(a), promulgated in February, 1971, and still in effect, wherein it is said of the NOLEO requirement of giving notice to law enforcement officials of the granting of AFDC to an abandoned child, that this "requirement has no effect upon the determination of eligibility. It is a requirement upon the agency . . . ."

also runs counter to the consistent construction placed on the Social Security Act by the courts.[13]

In our view the amended regulation does little to support the validity of § 101-a.

"[T]he principle that accords substantial weight to interpretation of a statute by the department entrusted with its administration is inapplicable insofar as those regulations are inconsistent with the requirement of § 402(a)(10) that aid be furnished 'to *all eligible* individuals.' "[14]

This point was reiterated in New York Department of Social Services v. Dublino,[15] which case supports rather than detracts from our decision here. In *Dublino*, the question before the Court was "whether that part of the Social Security Act known as the federal Work Incentive Program, pre-empts the provisions of the New York Social Welfare Law commonly referred to as the New York Work Rules."[16] The federal Work Incentive Program (WIN) and NOLEO were both parts of the 1967 AFDC amendments to the Social Security Act. A striking distinction between the two is that with respect to WIN, Congress made participation a condition of eligibility,[17] while Congress has made no such provision in regard to NOLEO. The Court in *Dublino* specifically noted the law's requirement that "cooperation in WIN is necessary for employable individuals to continue to receive assistance."[18]

The Court's disposition in *Dublino* furnishes further support. While the Court resolved the pre-emption question against the plaintiffs, it nevertheless remanded the case for consideration of whether specific New York provisions were in conflict with specific Social Security Act provisions,[19] the very issue before this court.

As to the weight accorded HEW's interpretation of the Act in *Dublino*, a number of distinguishing factors should be noted. The Court stated that the agency "never" considered the WIN legislation to be pre-emptive, that it had "followed consistently" a policy of approving state work requirements, and that Congress presumably knew of this "settled" administrative policy.[20] Accordingly, the Court felt the agency's construction of the Act should be followed, in the absence of compelling indications that it is wrong.[21] As for the instant case, the department's new interpretation effective July 2, 1973 certainly may not be termed settled or consistent nor may it be said the agency was never of a contrary opinion. To the contrary, prior to July 2, the agency was never of the opinion that a noncooperating AFDC recipient could be cut off from benefits; such "settled" and "consistently followed" agency interpretation as existed was that NOLEO provisions could *not* be transformed into conditions of eligibility.

Moreover, the unbroken line of court decisions construing these provisions and the absence of any Congressional corrective action persuade us that the agency's new interpretation is in error and not a guidepost to be followed judicially.

## CLASS ACTION STATUS

Class action status should not be granted here due to other pending feder-

13. *See*, cases cited note 7, *supra*.

14. Townsend v. Swank, 404 U.S. 282, 286, 92 S.Ct. 502, 505, 38 L.Ed.2d 448 (1971).

15. 413 U.S. 405, 93 S.Ct. 2507, 37 L.Ed.2d 688 (U.S. June 21, 1973).

16. 413 U.S. 405, at 407, 93 S.Ct. 2507, at 2509, 37 L.Ed.2d 688.

17. *See*, 42 U.S.C. § 602(a)(19)(F), 1967 amendments. In 1971 amendments, Congress made it even clearer that "every individual, as a condition of eligibility for aid"

must participate. 42 U.S.C. § 602(a)(19)(A).

18. 413 U.S. 405, at 411, 93 S.Ct. 2507, at 2512, 37 L.Ed.2d 688.

19. 413 U.S. 405, at 407, 93 S.Ct. 2507, at 2509, 37 L.Ed.2d 688.

20. 413 U.S. 405, at 420, 93 S.Ct. 2507, at 2516, 37 L.Ed.2d 688.

21. 413 U.S. 405, at 421, 93 S.Ct. 2507, at 2516, 37 L.Ed.2d 688.

al court actions in the State of New York. Intervening plaintiff Anna Stuck's assistance was terminated, after a fair hearing, for her failure to cooperate in obtaining support from the absent parent of her illegitimate child. All others "similarly situated" are embraced within other actions. Doe v. Lavine [22] concerns two named unwed plaintiffs in the same situation, and in Lewis v. Lavine [23] Judge Brieant granted a motion for class action status in a broader case involving § 101–a. He defined the class as all those in the state denied assistance for failure to name the father of a child, or disclose his whereabouts, or cooperate in paternity or nonsupport proceedings, except those already maintaining actions in state or federal courts. No purpose would be served by creating an including or overlapping class. Accordingly, class action status in this suit is denied as unnecessary, and more importantly, to avoid the possibility of any individual being subject to multiple or conflicting decisions.

## CONCLUSION

The NOLEO provisions have been on the books for six years. During that period, courts have repeatedly and consistently construed their effect. If there is to be a change at this late date, it might better result from congressional action.

We are mindful of the Court's admonition that "[c]onflicts [between state and federal programs] to merit judicial rather than cooperative federal-state resolution, should be of substance and not merely trivial or insubstantial," and also that "if there is a conflict of substance as to eligibility provisions, the federal law of course must control." [24]

In light of the adjudicated cases dealing with similar state attempts to limit eligibility and the contrast between the federal agency's recent and past interpretation of the effect of failure to cooperate, the additional eligibility requirement created by § 101–a, being in conflict with requirements prescribed by Congress, is invalid and unenforceable.

## ORDER

Accordingly, upon all the proceedings had herein, and the findings of fact and conclusions of law as contained in the decision herein, duly rendered, the court having jurisdiction of the parties and the subject matter, it is

Ordered, Adjudged and Decreed, that the defendants' motions to dismiss be and hereby are denied, and that summary judgment in favor of the plaintiff Anna Stuck against the defendants Lavine and Lascaris be and the same hereby is granted, declaring § 101–a, as amended, of the New York Social Services Law void, unenforceable and without effect insofar as it makes recipient cooperation in a paternity or support action against an absent parent a condition of eligibility for AFDC; and it is further

Ordered, that the defendants are permanently enjoined from denying or terminating AFDC assistance to plaintiff Anna Stuck or her minor children for failure to cooperate in obtaining support from an absent parent of her children; and it is further

Ordered, that class action status is denied; and it is further

█ Ordered, that plaintiff's demand for retroactive payment of the amounts wrongfully withheld from her is denied.[25]

22. Doe v. Lavine, 347 F.Supp. 357 (S.D.N.Y. 1972).

23. Lewis v. Lavine, Dkt. No. 72–CV–4249 (S.D.N.Y., decided March 6, 1973, order signed May 14, 1973).

24. New York Department of Social Services v. Dublino, 413 U.S. 405, 93 S.Ct. 2507, 37 L.Ed.2d 688 (U.S. June 21, 1973).

25. Despite the difference in equities between this case and Rothstein v. Wyman, 467 F.2d 226 (2 Cir. 1972), and the contrary view of other courts, *see,* Jordan v. Weaver, 472 F. 2d 985 (7 Cir. 1973), cert. granted, sub nom. Edelman v. Jordan, 412 U.S. 937, 93 S.Ct. 2776, 37 L.Ed.2d 398 (U.S. June 12, 1973) and Story v. Roberts, 352 F.Supp. 473 (M. D.Fla.1972), we feel constrained by this circuit's views regarding the Eleventh Amendment as enunciated in Rothstein to deny the relief of judicially ordered retroactive payments. Our denial is without prejudice to any rights plaintiff may have to obtain such payment administratively.