Lori NAFZIGER, Individually, on behalf of her dependent son, and on behalf of all others similarly situated, Plaintiff,

v.

Barbara BLUM, Individually and in her capacity as Commissioner of the New York State Department of Social Services; and S. Jean Wagoner, Individually and in her capacity as Commissioner of the Jefferson County Department of Social Services, Defendants.

Angela CURRY, on behalf of herself and her minor dependent child and on behalf of all others similarly situated, Plaintiff,

v.

Barbara BLUM, Individually and in her official capacity as Commissioner, New York State Department of Social Services; and Michael Nassar, Individually and in his capacity as Commissioner, Oneida County Department of Social Services, Defendants.

Nos. 80–CV–623, 80–CV–678.

United States District Court, N.D. New York.

June 3, 1982.

Onondaga Neighborhood Legal Services, Syracuse, N.Y., and Legal Aid Society of Oneida County, Utica, N.Y., for plaintiffs Nafziger, Curry, the plaintiff class; Maurie Heins, Syracuse, N.Y., Michael Bagge, Utica, N.Y., of counsel.

Robert Abrams, Atty. Gen. for the State of N.Y., Albany, N.Y., for defendant Blum; James McSparron, C. Michael Reger, Asst. Attys. Gen., Albany, N.Y., of counsel.

V. Michael Liccione, Oneida County Dept. of Social Services, Law Dept., Utica, N.Y., for defendant Nassar.

J.T. King, Jefferson County Dept. of Social Services, Law Dept., Watertown, N.Y., for defendant Wagoner.

## MEMORANDUM–DECISION AND ORDER

McCURN, District Judge.

These consolidated cases present the second chapter in the saga of New York State's efforts to superimpose its family responsibility laws on the federal criteria governing eligibility for benefits under the Aid to Families With Dependent Children (AFDC) program set forth in Title IV of the Social Security Act, 42 U.S.C. §§ 601 et seq.[1] At issue here is an informal, unwrit-

---

1. In the first chapter, a three-judge court in this District twice invalidated, for want of Congressional authorization, New York State's statutory efforts to condition receipt of AFDC benefits on the applicant's willingness to cooperate with welfare officials in the prosecution of paternity or support proceedings against an absent parent or spouse. The details, including the Con- gressional denouement, are recounted in *Lavine v. Shirley,* 409 U.S. 1052, 93 S.Ct. 555, 34 L.Ed.2d 506 (1972) (mem.); on remand, *Shirley v. Lavine,* 365 F.Supp. 818 (N.D.N.Y.1973) (3-judge court), aff'd, 420 U.S. 730, 95 S.Ct. 1190, 43 L.Ed.2d 583 (1975) (per curiam) (noting subsequent Congressional authorization for the disputed practice).

ten policy adopted by the New York State Department of Social Services which denies AFDC benefits to otherwise eligible minor mothers, and to other caretaker relatives under the age of 21 who refuse to accept what the Department considers to be suitable living arrangements with their parents. Plaintiffs, two teenage mothers who are eligible for AFDC benefits as caretaker relatives of their dependent children, brought these suits under 42 U.S.C. § 1983 on behalf of a class which the Court certified to include: All AFDC caretaker relatives within New York State who are eligible to receive AFDC benefits but have been denied such assistance on the ground that they have a legally responsible relative with whom they choose not to reside.[2]

Plaintiffs seek to have declared invalid and permanently enjoined the enforcement of the New York policy, which treats a legally responsible relative's offer of a home as an available resource to be considered in evaluating a minor caretaker relative's initial and continued eligibility for AFDC benefits. Plaintiffs contend that this policy is inconsistent with the Social Security Act, impermissibly burdens their constitutional right to privacy in family matters and denies equal protection of the laws because caretaker relatives over the age of 21 who refuse to accept living arrangements with legally responsible relatives are not denied AFDC benefits.

The question for decision on plaintiffs' statutory claim is whether Congress, in establishing the eligibility criteria for AFDC benefits, left States free to exclude from AFDC coverage those minor caretaker relatives who insist on living apart from their legally responsible relatives. This Court holds that because Congress has not authorized such an exclusion, New York's policy of denying AFDC benefits to minor caretaker relatives who decide to live apart from their parents is inconsistent with the Social Security Act, and therefore invalid under the Supremacy Clause of the United States Constitution.

## I. FACTS AND PROCEDURAL HISTORY

These matters are before the Court on cross-motions for partial summary judgment. For present purposes, the undisputed facts concerning one of the representative plaintiffs will suffice to illustrate the operation of New York's policy with respect to minor caretaker relatives who refuse to give up their separate residence and move in with their parents.

### A. The Nafziger Case

In December 1979, the Jefferson County Department of Social Services accepted Lori Nafziger and her two year old dependent son for public assistance in the AFDC category. The Department authorized an AFDC grant totalling $250.00 per month for mother and child. At this time, plaintiff was nineteen years old, was living with her son in an apartment in Carthage, New York, and was not receiving any financial support from her parents.

Section 101 of the New York Social Services Law provides that parents of a person who receives public assistance are responsi-

---

**2.** The term "dependent child" is defined by the Social Security Act to mean a needy child who has been deprived of the support and care of at least one parent; who is under the age of eighteen (or, if in school, under the age of 21), and who is actually living with one or more of the following relatives in a place of residence maintained as his or their own home: father, mother, grandparents, brother, sister, stepfather, stepmother, stepbrother, stepsister, uncle, aunt, first cousin, nephew or niece. *See* 42 U.S.C. § 606(a).

The term "caretaker relative" as used in this opinion means the individual who is one of the relatives specified in § 606(a) and with whom

any dependent child is living in a place of residence maintained by such individual (himself or together with any one or more of the other relatives so specified) as his (or their) own home. *See* 42 U.S.C. § 606(c).

The term "legally responsible relative" as used in this opinion means the parent(s) or stepparent(s) of any caretaker relative who is under the age of 21 and who applies for or receives public assistance. *See* N.Y. Social Services Law § 101 (McKinney 1980), quoted in full at n. 3, *infra.*

The term "minor caretaker relative," as used in this opinion, means any caretaker relative who is under the age of twenty one.

ble for her financial support until she is 21 years old.[3] Enforcement of the parental liability established by section 101 is provided for by section 101–a and 102, which permit either the recipient or the appropriate welfare official to bring support proceedings against the parents or other legally responsible relatives, "to compel any such person so responsible to provide for or contribute to such support." N.Y.Soc.Serv.L. § 101–a (McKinney Supp.1981).

In accordance with this statutory scheme, the County Social Services Attorney sent plaintiff a letter on December 21, 1979, stating that because she was under the age of 21 and receiving public assistance, the Department would have to determine whether her parents were able to contribute to her support. The letter further advised plaintiff that she should visit the Departmental office and complete a parental support petition. Transcript of Fair Hearing, February 29, 1980, at 18 (hereinafter cited as T. __). In response to this request, plaintiff provided the county officials with the information necessary to complete the support petition, and a petition was filed in state court. T. 34.

Notwithstanding plaintiff's cooperation in commencing a support proceeding, the County chose not to pursue that route. Instead, in late December or early January, the Department Attorney contacted the parents' attorney and reportedly learned that they were willing to have Lori and her son live with them and, in that manner, to meet plaintiff's needs for shelter, food and other necessaries. Based solely on this parental offer of a home, and without speaking to plaintiff about her reasons for maintaining a separate residence, the Department Attorney, "instructed the agency to

discontinue support inasmuch as an asset was available to her, if she chose; that it was not this agency's policy to give money to a young person, either male or female, just so they could live their lifestyle that (sic) they chose." T. 18.

In accordance with those instructions, the County agency notified plaintiff that effective March 1, 1980, her family's two-person grant would be cut in half, reflecting the agency's decision to eliminate plaintiff's needs from the grant and to prorate her son's grant.[4] Plaintiff then requested a fair hearing to contest the proposed reduction of her grant. The only witnesses at the hearing were plaintiff, a County Welfare employee who apparently contacted plaintiff's parents and learned of their willingness to provide a home for plaintiff, and the Department Attorney, who related the gist of his conversation with the parents' attorney concerning the offer of a home.

At the hearing, plaintiff gave the following, uncontroverted testimony concerning her decision to leave her parents' home and to establish a separate residence in December 1979. Plaintiff explained that while she had a fairly good relationship with her father, she and her mother did not get along at all during the two year period when she and her son lived in her parents' house. Basically, plaintiff pointed to daily disagreements with her mother concerning most aspects of childrearing, including the issues of bedtime, diet, feeding schedules and discipline. T. 22, 26. Plaintiff explained that her mother would end up telling the child what to do. These persistent arguments were upsetting to plaintiff and her son, who appeared confused as to which person was his mother. *Id.* While plaintiff

---

**3.** § 101 Liability of Relatives to Support

1. Except as otherwise provided by law, the spouse or parent of a recipient of public assistance or care of a person liable to become in need thereof shall, if of sufficient ability, be responsible for the support of such person, provided that a parent shall be responsible only for the support of a child under the age of twenty-one years. Step-parents shall in like manner be responsible for the support of step-children under the age of twenty-one years.

2. The liability imposed by this section shall be for the benefit of the public welfare district concerned..., and such liability may be enforced by appropriate proceedings in a court of competent jurisdiction. * * *

**4.** In her original complaint, plaintiff also challenged the validity of defendants' policy concerning proration. The defendants have conceded the invalidity of this policy, and this question is no longer before the Court.

believed that her mother was genuinely concerned about plaintiff and her son, this underlying friendship and concern would not alter her decision to live apart from her parents because: (1) based on past experience, her return would trigger a resumption of their arguments and (2) while living apart from her parents, plaintiff was able to get closer to her son. T. 33. Plaintiff also stated that her parents would permit her to go out but once a week and that if she failed to return home on time, she would be grounded. According to the Department Attorney's testimony, plaintiff's parents were willing to permit plaintiff the "normal freedoms of any eighteen or nineteen-year-old girl ... (but) they would not tolerate her bringing a man in the house to live with her..." T. 17.

The decision after the administrative hearing affirmed the county agency's reduction in plaintiff's AFDC grant. The decision was based on the following reasoning. Because plaintiff's parents are legally responsible for her support until she is 21, and since they are willing to have plaintiff reside in their home and at their expense, plaintiff has resources available to her which, if accepted, would prove suitable and sufficient to eliminate her need for AFDC benefits. In light of this outstanding offer of a suitable home,[5] plaintiff's decision to live apart from her parents is properly treated as a failure to pursue available resources. Plaintiff's Ex. B.

Plaintiff then commenced this action for declaratory and injunctive relief against Barbara Blum, Commissioner of the New York State Department of Social Services, and Jean Wagoner, Commissioner of the

Jefferson County Department of Social Services. On September 10, 1980, Chief Judge Munson entered a stipulation-Order in which the defendants agreed to maintain the status quo by furnishing plaintiff with a full AFDC grant during the pendency of this action, without prejudice, however, to whatever right defendants may have to recoup benefits granted under the stipulation in the event that the Department's resource policy is upheld by the judgment of this Court. In August 1981 plaintiff became 21 years old, and the question arose whether she was a proper class representative. In order to avoid the possibility of mootness, this case was consolidated with the companion case entitled *Curry v. Blum, et al.,* 80–CV–678. However, in light of the defendants' express reservation of their right to seek recoupment of any benefits paid to Nafziger under the stipulation, this Court has concluded that she has a live controversy with the defendants and is a proper class representative.

## II. DISCUSSION

■ It is well settled that where, as here, a statute or policy is challenged on both statutory and constitutional grounds, a federal court must consider the statutory challenge before engaging in constitutional adjudication. *See e.g., Harris v. McRae,* 448 U.S. 297, 306–07, 100 S.Ct. 2671, 2682–83, 65 L.Ed.2d 784 (1980); *Rosado v. Wyman,* 397 U.S. 397, 402, 90 S.Ct. 1207, 1212, 25 L.Ed.2d 442 (1970); *Shirley v. Lavine,* 365 F.Supp. 818, 821 (N.D.N.Y.1973) (3-judge court), *aff'd.,* 420 U.S. 730, 95 S.Ct. 1190, 43 L.Ed.2d 583 (1975) (per curiam). In our view, plaintiffs' statutory claim—that New York's policy is inconsistent with the Social Security Act—is dispositive of the case.

---

**5.** The DECISION AFTER FAIR HEARING reads in pertinent part:

"The credible evidence clearly establishes that appellant's parents are willing to support their daughter in their home. This offer of support is a resource available to appellant sufficient to eliminate her need for public assistance. Although appellant contends that her parents' home would not provide her and her son with an appropriate environment, such is not supported by the credible evidence presented at the hearing. Accordingly, the agency's determination to reduce appellant's grants by eliminating her needs therefrom was proper.

Since the credibility findings appear to have been made by a reviewing official rather than by the hearing officer, the degree of deference which they should command in this Court is uncertain. For the purposes of plaintiffs' motion for partial summary judgment, however, we will assume that the Nafziger's offer of a free living arrangement in their home was "suitable" in the sense that it did not pose a substantial threat to the health, safety or welfare of plaintiff or her infant son.

The AFDC program is a state-administered, public assistance program which was established under the Social Security Act and funded in part by federal grants. Those States which elect to participate in AFDC remain free "to set the level of benefits and the standard of need." *King v. Smith*, 392 U.S. 309, 334, 88 S.Ct. 2128, 2142, 20 L.Ed.2d 1118 (1968) (dictum); *see also Dandridge v. Williams*, 397 U.S. 471, 478, 90 S.Ct. 1153, 1158, 25 L.Ed.2d 491 (1970); however, a participating State may not impose eligibility criteria which are inconsistent with those set out in the Social Security Act, *King v. Smith, supra; Carleson v. Remillard*, 406 U.S. 598, 92 S.Ct. 1932, 32 L.Ed.2d 352 (1972). Should a State adopt conditions or criteria which exclude otherwise eligible AFDC beneficiaries, any substantial conflict must be resolved in favor of the federal standard. *See Van Lare v. Hurley*, 421 U.S. 338, 95 S.Ct. 1741, 44 L.Ed.2d 208 (1975); *New York State Department of Social Services v. Dublino*, 413 U.S. 405, 93 S.Ct. 2507, 37 L.Ed.2d 688 (1973); *Rush v. Smith*, 573 F.2d 110, 115 (2d Cir.1978). As the Supreme Court explained in *Townsend v. Swank*, 404 U.S. 282, 286, 92 S.Ct. 502, 505, 30 L.Ed.2d 448 (1971):

"(I)n the absence of congressional authorization for the exclusion clearly evidenced from the Social Security Act or its legislative history, a state eligibility standard that excludes persons eligible for assistance under federal AFDC standards violates the Social Security Act and is therefore invalid under the Supremacy Clause."

The question facing this Court is whether the New York State Department of Social Services has attempted to "narrow the federal standards that define the categories of people eligible for aid" by denying aid to minor caretaker relatives who decide not to accept an offer to move in with a legally responsible relative.

We begin by examining the Social Security Act itself, which requires each participating State to adopt a plan which "provides that aid to families with dependent children shall be furnished with reasonable promptness to all eligible individuals." 42 U.S.C. § 602(a)(10). There is no doubt that plaintiffs and their children qualify as dependent children and caretaker relatives respectively. It is equally clear that there are no exclusionary provisions in the present Act which apply by their terms to minor mothers or other caretaker relatives under 21 years of age who live apart from their parents. Indeed, as Judge Pettine observed in a similar context: "The fact that the mother, also a minor, and the dependent child are not living with the child's grandparent is not set forth in the Act as a statutory bar." *Lund v. Affleck*, 388 F.Supp. 137, 141 (D.R.I.1975). Judge Pettine further concluded that "the needy mother and her child stand independent under the Social Security Act and cannot be denied the same benefits paid to adult mothers." *Id.* at 142. This conclusion finds ample support in the express Congressional purposes which underlie the AFDC program, including the design to help such parents or other caretaker relatives or dependent children "to attain or retain capability for the maximum self-support and personal independence consistent with the maintenance of continuing parental care and protection, . . . ." 42 U.S.C. § 601.[6]

Defendants contend that the Department's policy of treating a parental offer of a home as a resource available to minor caretaker relatives is not inconsistent with federal law since the Social Security Act itself requires a State agency "in determin-

---

6. The State does not here seek to justify its policy on the ground that a minor caretaker relative's decision to live apart from the dependent child's grandparents is necessarily inconsistent with "continuing parental care and protection" for the dependent child. Other cases, however, have considered and rejected similar arguments in support of State policies which operate "to pressure minor mothers to live in the household of a related adult who in the Department's view would be a more responsible and emotionally stable person." *Lund v. Affleck*, 388 F.Supp. 137, 141 (D.R.I. 1975). Indeed, the plaintiff in this case testified without contradiction that she was able to get closer to her child when she was living apart from her parents.

ing need, (to) take into consideration any other income and resources of any child or relative claiming (AFDC) . . ." 42 U.S.C. § 602(a)(7). The initial difficulty with this argument is that the statute does not define the term "resources."[7] Instead, we must turn to the regulations promulgated by the Secretary, which provide, in pertinent part:

"(A) In determining need, all remaining income and resources shall be considered in relation to the State's need standard.

\* \* \* \* \* \*

"(D) Net income available for current use and currently available resources shall be considered; income and resources are considered available when actually available and when the applicant or recipient has the legal ability to make such sum available for support and maintenance.

"(E) Income and resources will be reasonably evaluated. Resources will be evaluated according to their equity value... Equity value means fair market value minus encumbrances (legal debts); Fair market value means the price an item of particular make, model, size or condition will sell for on the open market in the geographic area involved.

45 C.F.R. § 233.20(a)(3)(ii) (1980).

Whether this administrative explication of the "available resource" concept can be read to encompass an outstanding offer of living arrangements with the caretaker relative's parents is rendered more doubtful by consideration of the caselaw. In *Green v. Barnes*, 485 F.2d 242, 244 (10th Cir.1973), for example, the Court stated, "that to qualify as 'available' resources, they must be in hand, readily liquidated, or under the control of the individual." *See also, Wilczynski v. Harder*, 323 F.Supp. 509 (D.Conn. 1971) (3-judge court). If a minor caretaker relative accepts her parents' offer and chooses to live with them, it would appear reasonable for the State agency to consider the applicant's receipt of such in-kind support as "in hand" and therefore "available" within the meaning of the regulations. However, since Nafziger and the members of the class she represents have not accepted and are not receiving such in-kind support, the mere offer to reside in the parental home cannot be considered "in hand" as that term is normally understood. Plainly, the offer cannot be readily liquidated; nor is it, in that sense, under the control of the minor caretaker relative.

Defendants seek to bridge the gap between the federal statutory eligibility criteria and the challenged policy by reference to state law concerning parental support obligations. Defendants rely primarily on section 101 of the New York Social Services Law. *See* n. 3, *supra*. This section, however, does not impose any duty on children under the age of 21 to live with their parents or forego federally-funded AFDC benefits for which they are otherwise eligible. Rather, section 101 partially abrogates the common law rule relieving parents of their support obligation upon the child's emancipation by providing that parents remain responsible for the support of any of their children under the age of 21 who apply for, or receive public assistance. New York law further provides for enforcement of the parental liability provision by authorizing either the minor or the appropriate welfare official to commence support proceedings against the parents. N.Y.Soc.Serv.L. §§ 101–a, 102. Under this statutory scheme, New York welfare officials may be able to reduce or eliminate a caretaker relative's need for public assistance by securing a support judgment against the caretaker relative's parents.[8] Defendants concede that if the unwritten policy of denying ben-

---

7. Defendants' brief makes several references to the House and Senate reports which accompanied the 1939 amendments to the Social Security Act. Apart from the fact that the reports shed little light on the issue before this Court, it should also be noted that the caretaker relatives were not themselves AFDC recipients until 1962.

8. While the issue is not involved in this case, it is doubtful whether a support proceeding against plaintiff's parents would be successful after *Parker v. Stage*, 43 N.Y.2d 128, 400 N.Y. S.2d 794, 371 N.E.2d 513 (1977), discussed *infra*, at n. 12.

efits to minor caretaker relatives who refuse an offer to live in their parents' home is held invalid under the Supremacy Clause, the State would remain free to seek reimbursement from legally responsible parents by means of a petition brought under this statutory scheme.[9] In fact, the current compatibility between the federal AFDC criteria and New York's statutory scheme for securing reimbursement from legally responsible relatives results from direct Congressional authorization in response to the earlier litigation in *Shirley v. Lavine,* 365 F.Supp. 818 (N.D.N.Y.1973) (3-judge court), *aff'd, sub nom., Lascaris v. Shirley,* 420 U.S. 730, 95 S.Ct. 1190, 43 L.Ed.2d 583 (1975).

Prior to 1975, States were not free to impose, as a condition for receipt of AFDC benefits, any requirement that a caretaker relative pursue support from legally respon-

sible relatives under State law. Those courts which addressed challenges to such State-imposed conditions rested this limitation on the absence of Congressional authorization for the imposition of additional eligibility criteria. Thus, in *Shirley v. Lavine,* this Court declared invalid and enjoined the enforcement of section 101–a of the New York Social Services Law, which provided for a discontinuance of AFDC benefits to a caretaker relative who failed to cooperate with welfare officials in prosecuting a support proceeding against the absent parent. By the time this ruling reached the Supreme Court, however, Congress had enacted the Social Services Amendments of 1974 which explicitly sanctioned New York's statutory policy of requiring AFDC recipients to assist the State in its pursuit of financial support from legally responsible relatives.[10] As we noted in Part I of this

---

**9.** Seymour Katz, Director of the Department's Bureau of Income Support Programs, acknowledged the existence of this statutorily-based alternative as follows:

> The resource policy concerning children and spouses is based on Section 101 of the New York Social Services Law, making parents, who have sufficient ability, responsible for the support of their children under age twenty-one. As a practical matter, although no statistics are available, a significant number of applications by caretaker relatives under the age of twenty-one are accepted without requiring utilization of the parental home as a resource; the alternative being assignment of support rights and pursuance (sic) of support in Family Court.

Affidavit of Seymour Katz (October 20, 1981), ¶ 4. *Cf. Herweg v. Ray,* 455 U.S. 265, 102 S.Ct. 1059, 71 L.Ed.2d 137 (1982) where the Court invalidated Iowa's Medicaid plan to the extent that it required a noninstitutionalized spouse to contribute toward the care of an institutionalized spouse beyond the limited time period authorized by federal regulations concerning the "deeming" of income and resources between spouses, 42 C.F.R. § 435.723. *In response to the State's reliance on its family responsibility laws as support for the challenged policy, the Court stated, "we cannot agree with respondents that Congress intended the States to enforce their social responsibility policies wholly unimpeded by the Secretary's congressionally authorized power to give substance to the term "available." Id.,* 455 U.S. at 275, 102 S.Ct. at 1066. Having struck down Iowa's effort to superimpose its concept of legally responsible relatives directly on the Med-

icaid recipient, the Court was careful to point out that Iowa remains free to obtain reimbursement from the non-institutionalized spouse in a lawsuit brought under Iowa's family responsibility laws. *Id.,* 455 U.S. at 277 n. 14, 102 S.Ct. at 1067 n. 14.

In like manner, nothing in today's decision prevents New York from considering actual contributions made by the parents of an AFDC caretaker relative of any age. Nor does today's decision prevent New York from obtaining reimbursement from a minor caretaker relative's parents by means of the acknowledged alternative of a support proceeding against the legally responsible relative in Family Court. In this regard, the State is also entitled to insist upon the cooperation of the minor caretaker relative. *See* 42 U.S.C. § 602(a)(26); 45 C.F.R. § 233.12. Whether or not the state succeeds in securing a support order is a matter of State law. See nn. 8 and 12.

**10.** Title 42, United States Code, section 602(a)(26), as amended in 1975 provides:

> (26) . . . (A)s a condition of eligibility for aid, each applicant or recipient will be required—
>
> (A) to assign the State any rights to support from any other person such applicant may have (i) in his own behalf or in behalf of any other family member for whom the applicant is applying for or receiving aid, and (ii) which have accrued at the time such assignment is executed,
>
> (B) to cooperate with the State (i) in establishing the paternity of a child born out of wedlock with respect to whom aid is claimed

opinion, plaintiff Nafziger did cooperate with the County agency by providing the information necessary to commence a support proceeding against her parents. Thus, while New York has received express Congressional authorization for its statutory scheme for enforcing its family responsibility laws, the defendants are unable to point to any similar Congressional approval for the State's decision to forego that route and instead to read section 101 as imposing the additional requirement for AFDC eligibility that a minor caretaker relative continue to reside with his or her parents so long as such living arrangements do not pose a significant threat to the caretaker's health, welfare or safety.

This Court agrees with plaintiffs' contention that because Congress has specifically addressed the interplay between New York's family responsibility laws and the federal criteria for AFDC eligibility, New York is not free to enforce its family responsibility laws in a manner which differs substantially from the Congressional judgment. Put differently, this Court holds that a minor caretaker's obligation to pursue support from his or her parents is delimited by the terms of the 1974 amend-

ments to the Social Security Act, and New York's addition of a requirement that a minor caretaker relative accept any reasonable offer of free living arrangements as a condition of initial or continued eligibility for AFDC benefits is without Congressional support and therefore invalid.[11]

This conclusion is strengthened by the decisions from other federal courts which have struck down state efforts to deny AFDC benefits to minor caretaker relatives. In *Martinez v. Trainor*, 435 F.Supp. 440 (N.D.Ill.1976), the court invalidated an Illinois policy of refusing to permit persons under 18 years of age to serve as caretaker relatives absent special administrative approval, as inconsistent with federal eligibility criteria. Defendants assert that *Martinez* was concerned only with State efforts to impose age limits on the recipients of AFDC and is therefore inapposite to this case because New York's policy is not based upon the caretaker relative's age but rather on the State's view of the parental support obligation as an available resource to the caretaker relative. This argument is wide of the mark, for in *Martinez* the court held certain Illinois regulations concerning caretaker relatives between the ages of 18 and

and (ii) in obtaining support payments for such applicant, and for a child with respect to whom such aid is claimed, or in obtaining any other payments or property due such applicant or such child, unless (in either case) such applicant or recipient is found to have good cause for refusing to cooperate as determined by the State agency in accordance with standards prescribed by the Secretary. . . .

11. We have examined the state court cases on which defendants rely but do not find that they foreclose this Court's independent interpretation of the federal issues involved in this case. It is true that in *Reyes v. Blum,* 78 A.D.2d 1001, 433 N.Y.S.2d 912 (4th Dept.1980), motion for leave to appeal denied, 52 N.Y.2d 706, 438 N.Y.S.2d 1025, 420 N.E.2d 402 (1981), the Appellate Division found the challenged resource policy to be in harmony with the Social Security Act. That conclusion, however, was announced without any discussion of the 1975 Amendments, and it appears to have been based solely on the strength of *Edwards v. Travis,* 89 Misc.2d 1076, 393 N.Y.S.2d 496 (Sup. Ct., Sullivan Co. 1976), aff'd, 57 A.D.2d 687, 393 N.Y.S.2d 830 (3rd Dept.1977), mot. for leave to appeal denied, 42 N.Y.2d 805, 398

N.Y.S.2d 1026, 367 N.E.2d 659. In that case the trial court upheld a denial of AFDC benefits to a 17 year old mother "because she refused to return to her mother's home." 393 N.Y.S.2d at 498. Although the ruling was affirmed on appeal, the Appellate Division chose to rest its affirmance on the ground that plaintiff failed to demonstrate that her mother's proffer of assistance, "was either insufficient or pointless to pursue." 393 N.Y.S.2d at 831. With respect to the reasoning employed by the trial court, the Appellate Division stated: "The choice of how petitioner attempts to obtain that support or show its inadequacy rests solely with her *and does not mandate a return to her mother's residence as the only alternative." Id.* 393 N.Y. S.2d at 831–32 (emphasis supplied). Thus, *Edwards* does not stand for the proposition that a minor caretaker relative must, as a matter of state law, accept her parent's offer of a home or else forego AFDC benefits for which she is otherwise qualified. If as the *Edwards* Court reasoned, the choice rests with caretaker relative, it would follow that plaintiff Nafziger's decision to cooperate in commencing a support proceeding should conclude the matter.

20, "to be violative of the Social Security Act until amended to show clearly that mothers and other caretaker relative applicants may not be denied AFDC grants on account of their age *and consequent status as the objects of their parents' legal duty of support.*" 435 F.Supp. at 446–47 (emphasis supplied). This Court reads *Martinez* for the proposition that a State may not point to its family responsibility laws as support for an eligibility exclusion that it may not accomplish directly by imposing blanket age limitation on persons who apply for AFDC as caretaker relatives.

In *Lund v. Affleck*, 388 F.Supp. 137 (D.R. I.1975), a class of minor caretaker relatives challenged the validity of a Rhode Island policy which denied AFDC benefits to otherwise eligible applicants if they were under 18 years of age. Judge Pettine summarized the case as follows:

"However, under the present policy, if the grandparent for whatever reason refuses to apply, or if the minor child chooses to live outside that household, no 'AFDC' benefits will be available to the minor child or her offspring. The thrust of the policy is to pressure minor mothers to live in the household of a related adult who in the Department's view would be a more responsible and emotionally stable person.

"Such position finds no support in the (Social Security Act) nor can it be logically analogized from controlling decisional law.

*Id.* 338 F.Supp. at 141. After canvassing the social reasons which counsel in favor of the Congressional decision to formulate AFDC eligibility criteria without regard to the applicant's age, Judge Pettine concluded with language which bears repeating here:

"It appears to me it is inescapable the needy mother and her child stand independent under the Social Security Act and cannot be denied the same benefits paid to adult mothers.

*Id.* at 142. This Court agrees, and concludes that New York may not deny minor caretaker relatives the AFDC benefits which would be paid to them if they were over the age of 21 and therefore no longer the objects of their parents' legal duty of support.[12]

## ORDER

For all of the foregoing reasons, plaintiffs' motion for partial summary judgment is granted to the extent that it seeks a judgment declaring invalid and enjoining the enforcement of New York's policy of denying AFDC benefits to otherwise eligible, minor caretaker relatives who insist on living apart from their parents. Defendants' cross-motion for summary judgment is denied in its entirety.

The New York policy is hereby declared inconsistent with the Social Security Act and therefore invalid under the Supremacy Clause.

12. In *Parker v. Stage,* 43 N.Y.2d 128, 400 N.Y. S.2d 794, 797, 371 N.E.2d 513, 516 (1977), the New York Court of Appeals construed New York's current policy toward the allocation of financial responsibility for needy individuals as recognizing that family responsibility statutes are "often a destructive, rather than cohesive, factor in family unity." *Id.,* quoting McKinney's Session Laws of New York, 1966, pp. 2989, 2990. In *Parker,* the Court of Appeals held that the parental obligation of support established by section 101 of the Social Services Law is not absolute; where an older child chooses to leave home and becomes eligible for public assistance contrary to her parents' counsel, the Family Court is not required to order that the parent "then finish what has been begun by underwriting the lifestyle which his daughter chose against his reasonable wishes and repeated counsel." *Id.,* 400 N.Y.S.2d at 797, 371 N.E.2d at 516.

If, notwithstanding the express provisions of N.Y.Soc.Serv.L. § 101, the State may not compel parents to contribute toward the separate residence of an older child who leaves home rather than submit to parental control and guidance, it appears doubtful that the New York Court would read section 101 as a sufficient predicate for the State's policy of compelling a twenty year old mother to subjugate her interests in attaining personal independence and in nurturing an independent family unit, solely to accommodate her parents' decision to discharge their duty of support by inviting her to come and live with them.

The defendants, their successors, employees, agents, subordinates, and all other persons acting in concert therewith are permanently enjoined from enforcing that policy against any member of the plaintiff class and from denying AFDC benefits to any minor caretaker relative on the ground that the minor caretaker relative refuses to reside with his or her parents.

Defendant Blum is further ordered to notify all county and local social services agencies of the terms of this Memorandum-Decision and Order.

Plaintiffs are directed to submit their request for attorneys fees, together with sufficient documentation of hourly rates and time spent on this case, within twenty days of the entry of this Order, and the defendants shall file their response, if any, within fifteen days thereafter.

IT IS SO ORDERED.