OPINION OF THE COURT
Wachtler, J.
The question on this appeal is whether the Department of Social Services can compel a father to pay for the support of his 18-year-old daughter after she has left his house, voluntarily and against his wishes, to live with her paramour and have a child. Both the Family Court and the Appellate Division held that, under the circumstances, the father should not be *131 obligated to support his daughter even though she is receiving public assistance. The Commissioner of Social Services has appealed to this court by leave of the Appellate Division.
The facts developed at the Family Court hearing were not disputed. Respondent’s daughter was born in September of 1956. Several years later the father and mother were divorced. After the divorce the girl remained in her father’s custody. In early 1974 she informed her cousin that she intended to leave home to live with her paramour and have a child. Although neither she nor her boyfriend were employed, she said that she intended to support herself and her child by seeking public assistance. She did not return to school in the fall of 1974. In October, shortly after her 18th birthday, she left home while her father was at work. Nearly two weeks later he was able to locate her with the assistance of the police.
She returned home and for several months resided with her father, but only intermittently. For long periods of time she would "disappear”. On each occasion her father accepted her back and continued to support her. He contacted her former guidance counselor and arranged for her to return to school. He informed her of this and continuously urged her to resume her schooling but she refused. She also refused to discuss her goals with him. At one point he helped her to obtain a job, but she quit after four weeks. For a time she was in a job training program but she quit that as well. Finally in the spring of 1975 she took up permanent residence with her paramour who was also unemployed.
In the fall of 1975 respondent’s daughter gave birth to a child out of wedlock. She then applied for aid to dependent children and obtained public assistance for her child and for herself, as the mother of an eligible child (Social Services Law, § 349). In February, 1976 the Commissioner of Social Services of Orange County commenced this proceeding in the Family Court to compel the respondent to contribute toward his daughter’s support.* The proceeding was brought pursuant to subdivision 3 of section 101-a of the Social Services Law which authorizes a social services official to institute a support proceeding against a parent or other responsible relative if the applicant or recipient of public assistance "fails” to do so.
At the conclusion of the hearing the Family Court Judge dismissed the petition on the ground that respondent’s daugh *132 ter, by leaving home to live with her paramour and have his child, had "emancipated herself from her father and his household * * * and * * * as a result of that emancipation, the respondent is relieved of any obligation to support” her.
The Appellate Division unanimously affirmed. They noted that in Matter of Roe v Doe (29 NY2d 188, 192, 194), we held that when a child of employable age "and in full possession of her faculties, voluntarily and without cause, abandons the parent’s home, against the will of the parent and for the purpose of avoiding parental control she forfeits her right to demand support * * * [S]he cannot enlist the aid of the court in frustrating that authority, reasonably exercised, by requiring that her father accede to her demands and underwrite her chosen life style.” "Similarly”, the Appellate Division held, "the child should not be able to enlist the aid of the Department of Social Services to frustrate reasonably exercised parental authority” (55 AD2d 662, 663).
On appeal to our court the commissioner admits that respondent’s daughter "willfully abandoned her home with her father” and thus would be unable to compel him to support her if she had brought the suit on her own behalf (Matter of Roe v Doe, supra). The commissioner argues however that when the suit is brought by a social welfare official pursuant to section 101 of the Social Services Law the duty to support "is absolute upon a showing of sufficient ability on the part of the parent. There is no other qualification or exception in the statute.”
Initially it should be noted that even in a case like Matter of Roe v Doe (supra), when the suit is brought directly on the child’s behalf pursuant to section 413 of the Family Court Act, the father’s obligation to support is stated in mandatory terms. Our determination in that case, that a child who voluntarily and without good cause abandons the parent’s home "forfeits her right to demand support” is not based on any express statutory exception. It rests on the State policy of fostering "the integrity of the family” by precluding the courts from interfering in the special relationship between parent and child, absent "a showing of misconduct, neglect or abuse” (Matter of Roe v Doe, supra, pp 191, 194). It recognizes that the father’s obligation to support includes the right to exercise parental control and guidance even though the child may be old enough "to elect not to comply” (Matter of Roe v Doe, supra, p 194).
*133 The question then is whether a different policy applies when the suit is brought by a public welfare official to compel a father to support a child who would otherwise become a public charge.
It was once the policy of this State to place the financial burden of supporting needy individuals upon designated relatives, rather than the public, in order to reduce the amount of welfare expenditures (see, e.g., Foster, Freed & Midonick, Child Support: The Quick and the Dead, 26 Syracuse L Rev. 1157, 1162). Thus the common-law obligation to support wife and minor children was expanded by statute to include adult children, grandchildren and parents when they would otherwise become public charges (see, e.g., former Domestic Relations Ct Act, § 101, subds 1, 4, 5; former Children’s Ct Act, § 31, subds 4, 5; Family Ct Act, former § 415).
In recent years however the Legislature relented. The laws were amended to relieve individuals of the obligation to support grandchildren (L 1965, ch 674, § 1), adult children and parents (L 1966, ch 256) who were unemployed and destitute. Thereafter the burden passed to the public. In a message accompanying the 1966 bill the Governor noted that this was in part prompted by the need to comply with Federal law in order to qualify for Federal financial assistance. But he also noted that "Experience has shown that the financial responsibility of a broad class of relatives, imposed by statute, is more often a destructive, rather than cohesive, factor in family unity” (McKinney’s Session Laws of NY, 1966, pp 2989, 2990). Thus the legislative history shows that the current statutory scheme recognizes the need to preserve family unity even though the consequence is to place needy relatives on the public welfare rolls.
In addition the Legislature has expressly granted the courts discretionary powers in these cases. A father, of course, is still generally obligated to support his children until they are 21 years of age (Family Ct Act, §§ 413, 415; Social Services Law, § 101, subd 1; cf. Domestic Relations Law, § 32, subd 2). And public welfare officials may seek to enforce the obligation if the child is an applicant for or recipient of public assistance (Social Services Law, § 102, subd 1; § 101-a, subd 3; Family Ct Act, § 422, subd [a]). But in such cases the obligation is not absolute. Section 415 of the Family Court Act states: "The spouse or parent of a recipient of public assistance or care or of a person liable to become in need thereof or of a patient in *134 an institution in the department of mental hygiene, if of sufficient ability, is responsible for the support of such person or patient, provided that a parent shall be responsible only for the support of his child or children who have not attained the age of twenty-one years. In its discretion, the court may require any such person to contribute a fair and reasonable sum for the support of such relative and may apportion the costs of such support among such persons as may be just and appropriate in view of the needs of the petitioner and the other circumstances of the case and their respective means”. (Emphasis added.) The committee which drafted the Family Court Act noted in its report that section 415 consolidated certain sections from prior laws "but substitutes for the current mandatory language a discretionary provision.” The change was designed to permit the courts to refuse to compel support when it might lead to an injustice in a particular case (see Committee Comment to Family Ct Act, § 415, McKinney’s Cons Laws of NY, Book 29A, p 259).
In sum we cannot agree with the commissioner that whenever an older child chooses to leave home, for any reason, the parents must pay for the child’s separate maintenance, or contribute support, if the child applies for public assistance. The courts must still consider the impact on the family relationship and the possibility of injustice in the particular case. Of course the fact that the child is eligible for public assistance may, as is evident here, permit her to avoid her father’s authority and demands however reasonable they may be. But it does not follow that the parent must then finish what has been begun by underwriting the lifestyle which his daughter chose against his reasonable wishes and repeated counsel.
It should be emphasized that this is not a case of an abandoned child, but of an abandoned parent. There is nothing to indicate that the respondent abused his daughter or placed unreasonable demands upon her. There is no showing that he actively drove her from her home or encouraged her to leave in order to have the public assume his obligation of support. Indeed the contrary appears to be true. The undisputed proof in this record establishes that the father continuously supported his daughter from birth; that he urged her to remain at home and continue her schooling; that he was a forgiving parent who always accepted her back after her absences and that he made efforts to obtain employment for *135 her. We simply hold that under these circumstances the courts below could properly refuse to compel him to pay for her support when she chose to leave home to live with her paramour.
Accordingly, the order of the Appellate Division should be affirmed.
Chief Judge Breitel and Judges Jasen, Gabrielli, Jones, Fuchsberg and Cooke concur.
Order affirmed, with costs.

 It is conceded that respondent is not responsible for the support of his grandchild.