■ GERALD COHEN, Respondent, v RENATA SCHNEPF, Appellant. — In a proceeding by a father pursuant to section 241 of the Domestic Relations Law to suspend the child support provision of a judgment of divorce, upon the ground that the mother had interfered with the father's visitation rights, the mother appeals, as limited by her brief, from so much of an order of the Supreme Court, Nassau County (Harwood, J.), dated September 14, 1982, as granted the father's application to suspend child support payments. Order affirmed insofar as appealed from, with costs. In October, 1968, the parties executed a separation agreement, the terms of which were subsequently incorporated into a Mexican divorce decree. The agreement granted custody of the parties' two children to the mother, with the father receiving specific visitation rights. The father was also required to provide $30 weekly support for their son, Jeff Cohen. Although there is a dispute as to whether the mother interfered with the father's rights of visitation, the father was obviously experiencing some trouble in visiting his son. This led to an application by the father in the Supreme Court, Nassau County, which culminated in a stipulation implemented by an order entered February 15, 1977, spelling out specific,

revised rights of visitation. Since the granting of that order, the father saw his son only some five times and has thereafter been denied access to his son for approximately five years. The mother and the son told the father that the son did not want to see him, and upon the father's last visit to their home, the stepfather, after telling the father that the son would not see him, threatened the father with assault if the father did not leave. In addition to the father having been denied his visitation rights, the son has been so alienated from his father, that the son has unofficially used the name of his stepfather instead of his father. Proof of this was shown by a copy of an envelope, postmarked in 1979, in which the son referred to himself as Jeffrey Schnepf instead of Jeff Cohen. The father also discovered that the son had been enrolled in school under the name of Schnepf, and has been referred to as Schnepf for several years. The son did not deny that he was using his stepfather's name. In fact, shortly after his 18th birthday, when he could do so without the consent or knowledge of the father, the son secured a court order legally changing his name from that of his father to that of his stepfather. The son also admits that the fact that contact or communication with his father has not been successful "has been due in part to my own actions". A most telling indication of the son's alienation from the father is in his own affidavit in support of his mother's cross application for an upward modification of the father's support payments. As proof of the fact that he was entering college, the son appended his application to Nassau Community College to his affidavit. The application asked for the name of the son's parent. Instead of writing the name of his father, the son entered the name of "Werner Schnepf", his stepfather. Due to the foregoing facts, the father applied pursuant to section 241 of the Domestic Relations Law to suspend his support payments. Special Term granted the father's application deciding, *inter alia,* that by admittedly rejecting visitation, and by "cavalier rejection" of his father's name, the son has asserted his independence from his father and has no right to claim support from him. The mother appeals as limited by her brief, only from so much of the court's order as granted the father's application. Children generally have a right to support from their parents until they are 21 years old (Family Ct Act, §§ 413, 415). However, this right may be forfeited if child of employable age emancipates himself by assuming a status inconsistent with that of parental control (*Matter of Parker v Stage,* 43 NY2d 128; *Matter of Roe v Doe,* 29 NY2d 188). In the instant case, the son, upon reaching 18 years of age, elected to change his name from that of his father to that of his stepfather. This act alone would not have relieved his father from support payments (see *Matter of Good v Stevenson,* 113 Misc 2d 270; *Rosemary N. v George B.,* 103 Misc 2d 1036). However, this was not the only action the son took in order to alienate his natural father; it was merely the last one. The son was also using his stepfather's name as a minor without the knowledge or consent of his father and admittedly rejected visitation with his father. In fact, the father has been denied his visitation rights for the past five years. When all of the son's acts are considered together, they clearly constitute enough of an abandonment of the father for the son to forfeit his claim for support. Gibbons, J. P., Gulotta, O'Connor and Niehoff, JJ., concur. [115 Misc 2d 879.]