Submitted on record and briefs February 17, affirmed June 27, reconsideration denied September 28, petition for review denied November 20, 1984 (298 Or 238)

# DEPARTMENT OF HUMAN RESOURCES,
*Appellant,*

*v.*

# McGRAW,
*Respondent.*

(32856; CA A28605)

683 P2d 154

Dave Frohnmayer, Attorney General, James E. Mountain, Jr., Solicitor General, and Helen M. Rockett, Special Assistant Attorney General, Salem, filed the brief for appellant.

Brian J. MacRitchie, and Gray, Fancher, Holmes & Hurley, Bend, filed the brief for respondent.

Before Gillette, Presiding Judge, and Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

This is a proceeding under Oregon's parental responsibility for dependent children statutes. ORS 416.400 *et seq.*[1] The Department of Human Resources (DHR) appeals from a trial court judgment dismissing its Notice and Finding of Financial Responsibility entered pursuant to ORS 416.415. The issue is whether a parent having legal custody of a minor child who left that parent's home without permission and without good cause may be required to reimburse DHR for public assistance that it provided to the minor child.[2] We conclude that, on the facts found here, DHR may not recover from the custodial parent. Accordingly, we affirm.

In 1978, on father's motion, a dissolution decree was modified to change custody of his daughter Tina from her mother to him. As modified, the decree also terminated his child support obligation. Tina lived with her father until 1982, then returned to her mother's home. The dissolution decree was not modified to reflect that change. Tina apparently left her father's home because he would not let her go to California.[3] It was her decision to leave his home, and she did so without his permission. Nevertheless, he maintains a good relationship with her and has always been willing and able to provide a home and support for her. Tina began receiving

---

[1] ORS 416.405 provides:

"It is the public policy of this state that dependent children shall be maintained, as much as possible, from the resources of the parents, thereby relieving or avoiding, at least in part, the burden often borne by the general citizenry through public assistance programs. The existing remedies pertaining to family desertion and nonsupport of dependent children are to be augmented by the additional remedies provided in ORS 107.085 and 416.400 to 416.470 which are directed to the real and personal property resources of the responsible parents. These additional remedies are not in lieu of existing law. ORS 107.085 and 416.400 to 416.470 shall be liberally construed and administered to implement the policy stated in this section."

[2] The trial court stated that the issue was whether DHR had authority to act without a support order when legal custody was vested in the obligor. The court concluded that, in passing ORS 416.400 *et seq*, the legislature did not intend to vest DHR with authority unilaterally to modify a pre-existing court decree. We have never known of a decree or order that required a custodial parent to pay a fixed amount of child support. It is implicit, however, that a custodial parent will support a child according to the child's needs and the ability of the parent to contribute.

[3] We are not so bold as to suggest that the relationship between teenager and parent is always calm. However, the record here provides no other explanation of Tina's reasons for leaving her father's home. No suggestion has been made that her leaving was for good cause.

public assistance in May, 1982.[4] At that time she was 17 and a high school student.

The legislative history of ORS 416.400 *et seq,*[5] shows that in enacting the responsibility statutes, the legislature was attempting to shift responsibility for the support of dependent children from the state to parents. DHR's Director testified that the legislation "would establish an obligation to support beginning with the receipt of public assistance * * *." He identified DHR's "target group":

> "The legislation applies only to those cases where the responsible parent has left the household without providing monetary support for the children, and the children must turn to the state for support." Minutes of the Senate Judiciary Committee on Senate Bill 222, Exhibit C, March 6, 1979.

The record here shows that father has legal custody of Tina. He provided her with a home and support. She left that home without his permission and, insofar as we can determine, without good cause. Tina is "dependent" only in the sense that virtually every child is economically dependent on parents or others. She is not dependent in the sense that her father has unreasonably failed, refused or neglected to support her. He has not deserted her; nor has he refused to support her. He is ready, willing and able to do so in his home. Tina is not an abandoned child. Rather, she abandoned her father. Nothing in the record indicates that he abused her, placed unreasonable demands on her, drove her from his home or encouraged her to leave in order to have the public assume his obligation to support her. Indeed, the contrary appears to be true.

At best, the pertinent statutes are ambiguous. We decline to construe them in a manner that we conclude would be deleterious to the parent-child relationship and would surely work an economic injustice in many cases. We do not believe that the legislature intended that a responsible custodial parent should be required to underwrite a child's lifestyle choices against that parent's reasonable wishes and

---

[4] The record does not indicate on what basis assistance is being provided or whether DHR made any attempt to determine Tina's mother's responsibility and ability to contribute toward her support.

[5] *See* Or Laws 1979, ch 421.

advice or that it intended the statutes to cover facts such as those found here.[6]

On these facts, we conclude, as a matter of law, that DHR lacked authority to issue its Notice and Finding of Financial Responsibility.

Affirmed.

---

[6] This case has many similarities to *Parker v. Stage,* 43 NY2d 128, 400 NYS 2d 794, 797, 371 NE 2d 513; *Annot.,* 98 ALR 3d 328 (1977). There, the child left her father's home to live with her paramour and have a child. Neither she nor her boyfriend was employed. She applied for and received public assistance. Thereafter, the state sought reimbursement from her father. He refused to pay, contending that she was welcome to come home and that he would support her there. The New York Court of Appeals stated:

"In sum we cannot agree with the commissioner that whenever an older child chooses to leave home, for any reason, the parents must pay for the child's separate maintenance, or contribute support, if the child applies for public assistance. The courts must still consider the impact on the family relationship and the possibility of injustice in the particular case. Of course the fact that the child is eligible for public assistance may, as is evident here, permit her to avoid her father's authority and demands however reasonable they may be. But it does not follow that the parent must then finish what has been begun by underwriting the lifestyle which his daughter chose against his reasonable wishes and repeated counsel.

While there are obvious factual differences between this case and *Parker,* we conclude that the legal and equitable considerations are similar.