■ LINDA LIPSKY, Appellant, v WARREN LIPSKY, Respondent. —Order of the Supreme Court, New York County (Hortense W. Gabel, J.), entered on August 13, 1984, which granted plaintiff's motion to increase the amount which defendant is required to pay for child support, alimony and counsel fees to the extent of directing the continuation of defendant's child support obligation of $100 per week, is reversed, on the law, the facts and in the exercise of discretion, to the extent appealed from, the motion granted, defendant directed to make child support payments of $200 per week as of August 13, 1984, and the matter of alimony and counsel fees is remanded for a hearing to determine the appropriate amount, if any, with costs and disbursements on the appeal.

The parties herein were divorced in 1968 following the execution of a separation agreement. Pursuant to that agreement, defendant was to pay $100 per week in child support and alimony with provision being made for increased payments based upon his improved financial situation. By 1977, however, defendant was more than $15,000 in arrears, and plaintiff was compelled to institute an action in Florida, where defendant now resided, to recover the amount owed. The case was ultimately settled for $10,500 to cover the arrearage, and plaintiff accepted a reduction in child support from $115 to $100 and in alimony from $85 to $1 per week.

The instant proceeding was commenced in 1982 by plaintiff, who seeks an increase in alimony and child support based upon a change in circumstances of the parties; she is also asking for counsel fees. The matter was thereafter referred to a special referee for the purpose of ascertaining the present needs of plaintiff and the child and defendant's financial ability to pay. A hearing was conducted on July 22, 1983 at the conclusion of which the referee, finding that defendant's income and assets "amply enable" him to pay increased child support, recommended that he be directed to pay $200 per week. No mention was made of the issue of alimony or counsel fees. Special Term then referred the case back to the referee to determine whether the child had become emancipated and whether plaintiff had interfered with defendant's visitation rights. A new hearing was thereupon held on March 14, 1984. In the opinion of the referee, the child had never been emancipated, and his mother had not interfered with defendant's visitation rights. He, therefore, advised that plaintiff's motion for an upward modification be decided in accordance with the findings set forth in his original report.

When the referee's report was presented to Special Term for confirmation, the court rejected the findings and recommendation contained therein on the ground that the child, "who is almost an adult, has consciously elected to not make any overtures to his father, contrary to his mother's sound advice. Whether his reasons for continuing the estrangement between himself and his father are (or were) for good cause, he cannot be heard to demand more support from his father while, at the same time, refusing to even talk to him on the telephone." In that regard, the court relied upon *Cohen v Schnepf* (94 AD2d 783), for the proposition that a child's right to support from his parents until he reaches the age of 21 may be forfeited if he "acts in such a manner as to alienate or reject his natural father". Nevertheless, since defendant's contractual obligations were involved, and since plaintiff had encouraged good relations between her child and his father, the court stated that "it would not be fair to terminate all contributions by defendant to his son's support." Thus, the court concluded that maintenance of defendant's existing obligations at the level agreed upon by the parties appeared appropriate. However, an examination of the record herein does not support the determination by Special Term.

Plaintiff, who has a Masters Degree in Hospital Administration, is now engaged in her own business doing Medicaid recovery work for hospitals and health centers. Respondent is

a medical doctor with a general practice in Coral Gables, Florida. Their son Phillip was born in 1964. Since September of 1982, he has been a full-time student at Brockport State College in New York State. His tuition, room and board are covered entirely by his mother except for the proceeds of two government-guaranteed loans. Although he does earn some money at various jobs, his income is nominal and clearly insufficient to render him self-supporting. Phillip's relationship with his father is extremely poor. Prior to the hearings held in connection with this matter, he had not seen his father for at least four or five years. Their last meeting had occurred when Phillip visited his maternal grandfather in Florida. On that occasion, he and defendant had spent a few hours together one afternoon. Defendant did not recall the exact date of that meeting, and he made no effort to arrange for another one. While it is true that for some years following his parents' divorce, Phillip had been in regular, if uneasy, contact with his father, in 1976 while he was away at summer camp, defendant suddenly moved to Florida with his second wife. He did not inform his son that he was leaving, left no forwarding address, and ceased making any support payments. Phillip's education was thereby disrupted as he was forced to leave the private school where he was enrolled. In order to locate her former spouse, plaintiff had to hire a private detective and expend funds borrowed from her family.

Even after plaintiff finally discovered defendant's whereabouts, no genuine relationship was reestablished between Phillip and his father. When Phillip sent defendant an invitation to his Bar Mitzvah, the latter did not so much as acknowledge this important event by a gift, a card, or a telephone call, much less his presence. The reason given by defendant for this neglect was that the invitation was addressed solely to himself and did not include his second wife. Yet, he made no attempt to contact his 12-year-old son or plaintiff to explain his objection and request permission to bring his wife. He simply chose to ignore Phillip's Bar Mitzvah. Defendant also admitted that he did not remember which school Phillip was attending. He did not visit his son when the latter was sick and had to be hospitalized, did not invite Phillip to his home in Florida, did not go to New York to see the boy and generally made no effort to foster a relationship with his son. Indeed, the extent of defendant's association with Phillip over the years seems to have been no more than some uncomfortable telephone conversations. It is, therefore, entirely understandable that Phillip, despite being encouraged

by his mother to telephone and write to his father, did not follow her advice, claiming that defendant did not leave any "openings" for him.

The credible testimony in this case indicates that defendant abandoned his child both financially and emotionally. The finding by the referee that defendant "bears substantial responsibility for the lamentable breakdown in communication with his son" is amply supported by the record. Consequently, he may not now contend that the estrangement between Phillip and himself relieves him of his duty to meet the boy's educational and other needs. The matter before us is thus distinguishable from *Cohen v Schnepf (supra)*, the case cited by Special Term, since the father therein consistently endeavored to exercise his visitation rights and maintain a good relationship with his child. The defendant's conduct, on the other hand, manifests a distressing lack of interest in, and concern for, his son. He has certainly failed to prove his defense of wrongful interference with his right to visitation. Under these circumstances, and in view of the clear evidence that defendant, a physician, is well able to finance Phillip's undergraduate education, Special Term should have granted the motion for an increase in the amount of child support. Moreover, plaintiff has adequately demonstrated a change in circumstances and that she is entitled to seek an upward modification in alimony. Thus, her request for an increase in alimony and counsel fees should be remanded for a hearing to determine the appropriate amount, if any. Concur—Kupferman, J. P., Asch, Fein, Milonas and Rosenberger, JJ.