OPINION OF THE COURT
Andrew P. Bivona, J.
This is an objection to a decision and order of the Hearing Examiner (J. Radley Herold) dated November 15, 1996, and entered November 21, 1996. That decision dismissed the petition of the Orange County Department of Social Services which sought an order of child support for the respondent’s son who was over the age of 18 and receiving public assistance as a *88 result of his residency in a long-term drug rehabilitation program after an arrest on felony charges. The issue presented on this objection is whether parents are responsible to support a child over the age of 18 but under the age of 21 who, as the result of an arrest on felony charges, becomes a recipient of public assistance.
The respondents are the parents of Charles Clavijo, Jr., who at the time of the filing was 19 years of age having been born on April 24, 1977. On December 12, 1995, while 18 years of age, Charles became eligible for public assistance when, as the result of an arrest for burglary, he was placed in a drug rehabilitation center, specifically, Hospitality House in Albany, New York.
At the preliminary proceeding held on June 19, 1996, the Hearing Examiner directed that Charles be present at the hearing scheduled for September 18, 1996, and he set a temporary order of support. At the time of the September hearing, the attorney for the Department of Social Services represented that the Department was unable to subpoena its recipient as the drug rehabilitation center would not confirm or deny whether Charles was a resident of the facility because the drug rehabilitation center claimed it was prohibited from doing so pursuant to Federal statute.
The hearing proceeded without Charles. The Department of Social Services called a Ms. Solansky as its only witness. She testified that she had with her the records regarding the public assistance of Charles Clavijo, Jr. She testified that Charles had become a recipient of public assistance on December 21, 1995, and that he received public assistance in the amount of $875 per month based upon his in-patient status at a drug and alcohol rehabilitation center.
On cross-examination, the witness testified that she did not know whether Charles had been terminated from the rehabilitation program for a period of time or whether the Department had collected against the respondent father’s insurance.
The respondent father testified that he had moved his family to Orange County from New York City and his son’s problems began after the move. He testified that when he discovered that his son had a drug problem he was planning to put him into a drug rehabilitation program to be paid for by his insurance. He stated that after his son was arrested "it was completely out of my hands.” He was upset because no one advised him that he would be financially responsible for the program in which Charles was enrolled with the approval of *89 the criminal court before which the felony charges were pending. Further, no one was consulting him regarding his son’s treatment or providing him with any information.
Upon examination by the Hearing Examiner, Mr. Clavijo testified that his son had resided at home until his arrest, that he was concerned about his son, that he and his wife set curfew for their son and when their son did not come home at the proper time, he would go out and search for him. Upon further questioning, he stated that he and his wife loved their son and would take him home. In short, Mr. Clavijo presented as a loving, concerned parent who was frustrated by a child who was out of his parents’ control and a system that would not let him participate in the care of his child but expected him to pay for same.
The Hearing Examiner admitted into evidence as respondents’ exhibit D a letter from Treatment Alternatives to Street Crime (TASC) addressed to the Hon. Thomas J. Byrne, advising Judge Byrne that Charles Clavijo, Jr. had been admitted into Hospitality House on December 12, 1995, after being found eligible for TASC services on November 30, 1995. It further stated that Charles had been discharged as of July 11, 1996, from Hospitality House because of "lack of motivation”. Mrs. Clavijo testified that Charles was in jail for approximately l1/2 months as a result of this discharge until he was accepted back into the program.
The Hearing Examiner determined that the parental demands were not unreasonable and that their son’s actions avoided parental control. He found that under the circumstances and in the interest of justice that the subject child was emancipated and dismissed the petitions. The Commissioner objects to this decision of the Hearing Examiner and the parents, pro se, filed a rebuttal. This court affirms the dismissal of the petitions.
Under New York State law parents are responsible to support their children under the age of 21 years (Family Ct Act § 413 [1]). Social Services Law § 101 (1) and Family Court Act § 415 explicitly impose financial liability on parents of children under the age of 21 who are recipients of public assistance. However, although it is fundamental public policy in New York State to support one’s children, it is recognized that parents may be relieved of their support obligations because of the young person’s actions which may result in their emancipation (Matter of Roe v Doe, 29 NY2d 188) or constructive emancipation (Matter of Alice C. v Bernard G. C., 193 AD2d 97, 105).
*90 In Alice C. v Bernard G. C. (supra, 193 AD2d, at 105), emancipation was explained as follows: "Children are emancipated if they become economically independent of their parents through employment, entry into military service, or marriage, and may also be deemed constructively emancipated if, without cause, they withdraw from parental control and supervision (see, Besharov, Practice Commentary, McKinney’s Cons Laws of NY, Book 29A, Family Ct Act § 413, at 70; see also, Matter of Roe v Doe, supra). ”
Pursuant to section 415 of the Family Court Act, a court may exercise its discretion when determining whether or not a parent of a person eligible for public assistance will be required to contribute to the child’s support. This is true even when the child is receiving benefits and the petitioner is the Department of Social Services (Matter of Parker v Stage, 43 NY2d 128, 134). Simply put, the Department of Social Services has no greater rights than its recipient.
In Matter of Parker v Stage (supra, 43 NY2d, at 132), wherein a parent was deemed abandoned by the child, thereby emancipating herself, the Court of Appeals noted that its decision in Roe v Doe (supra), "rests on the State policy of fostering 'the integrity of the family’ by precluding the courts from interfering in the special relationship between parent and child, absent 'a showing of misconduct, neglect or abuse’ (Matter of Roe v Doe, supra, pp 191, 194). It recognizes that the father’s obligation to support includes the right to exercise parental control and guidance even though the child may be old enough 'to elect not to comply’ [citation omitted].”
The issue then becomes whether, under these circumstances, Charles would be entitled to support from his parents. It is apparent that Charles was beyond the control of his parents even prior to his arrest as evidenced by his failure to obey curfews provoking his father to go in search of him. If he had not been living at home at the time of his arrest there would be no question that the parents would not be liable to support him as by his actions he had placed himself beyond parental control. There was no evidence that these parents acted in other than a conscientious manner regarding their son. There was no "showing of misconduct, neglect or abuse” (Matter of Roe v Doe, supra, 29 NY2d, at 194) by these parents.
The courts have always looked at the issue of parental control, and one aspect of that control has been the willingness of the older child to conform to reasonable parental expectations by living a lifestyle the parent deems appropriate. Here, *91 the child chose a lifestyle of drugs and crime. The courts would not have ordered the parents to support this lifestyle. It is certainly true that Charles’ parents were supporting him prior to his arrest by permitting him to live at home when he was not obeying curfews and not working. However, it was also their uncontradicted testimony that when they determined that the source of their son’s problems was drugs, they were willing to take steps to address the issue. Unfortunately, all control was removed from them by a combination of their son’s actions and the failure of the agencies involved to consult with the parents. This is not a case where the parents were unreasonable in failing to provide treatment for their child. It is a case where the parents were not permitted to provide treatment for their child. In other words, they were deprived of parental control whether it was because of the felonious acts of their son or the failure of the agencies involved to permit them to participate in the decision-making processes.
In its objection, the Department relies on the case of Henry v Boyd (99 AD2d 382 [4th Dept 1984]). In that case, the unwed, pregnant daughter moved out of her parents’ crowded home and became a recipient of public assistance after the birth of her child. The Family Court found that the daughter had moved out of the family home with the assistance of her parents and was still subject to parental guidance and control. After initiation of the support proceeding but prior to the final order of support (although after her father had signed a support agreement with the Department of Social Services), she married the father of the child. However, the Family Court dismissed the modification petition filed by the parents finding " 'the separation of [the daughter] from her parents * * * was agreed to by the parents and assisted in by the parents and that the parents continue to be responsible for [her] support after the separation.’ ” (Henry v Boyd, supra, 99 AD2d, at 384, quoting Family Ct decision.)
Although marriage usually emancipates a minor, the Fourth Department found: "In this age of liberal divorce the purpose of the law which requires a parent to support a minor child on welfare should not be thwarted by the simple expediency of a convenient marriage which may be of short duration. Consequently, before the duty may be terminated there must be evidence before the court of the impact of the marriage on the parent-child relationship and proof to establish that the reciprocal rights of support on the one hand, and custody and services on the other, are in fact dissolved by the conduct of the *92 parties which resulted in or flowed from the infant’s marriage. The record here is devoid of any such proof.” (Henry v Boyd, supra, 99 AD2d, at 387-388.)
The instant matter is clearly distinguishable as these respondents had no control over their son becoming a recipient of public assistance and have no rights to custody or service.
It is apparent that had the son commenced an action for support for other than what his parents were willing to provide he would not have been successful. As previously stated, the Commissioner of Social Services has no greater rights than its recipient (Matter of Parker v Stage, supra). This court finds that the doctrine of constructive emancipation is applicable here as by his actions Charles placed himself beyond parental control so that he could not be supervised by his parents or accept guidance from them. It would be an injustice to find otherwise. This court will not substitute its judgment for that of the parents nor permit well-meaning agencies to do so and then impose a financial obligation upon the parents. Under these circumstances, this court will not impose a financial liability upon them greater than that which they were willing to provide for their son.