Matter of Philip D. v Marietta E. (2004 NY Slip Op 50438(U))

[*1]

Matter of Philip D. v Marietta E.

2004 NY Slip Op 50438(U)

Decided on May 19, 2004

Family Court, Kings County

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 19, 2004

Family Court, Kings County
In the Matter of a Proceeding for Custody 
 Under the Article 6 of the Family Court Act, PHILIP D., Petitioner,
against
MARIETTA E., Respondent.
V-22423/98C

Esther M. Morgenstern, J.
Should the Court suspend/ terminate child support where the non-custodial parent alleges that the custodial parent alienated the subject child from the non-custodial parent? Petitioner father seeks suspension/termination of child support. Petitioner alleges that Respondent mother alienated the child's affections from the Petitioner. A hearing on visitation commenced before this Court on November 26, 2002 in which the subject child's treating therapist and the forensic expert testified. The testimony revealed that the subject child was suffering from anxiety and did not wish to have a relationship with his father.
Petitioner and Respondent married in 1990. The [*2]subject child was born on May 24, 1994. The couple separated in 1995 and were divorced in 1998. Pursuant to the divorce, the court granted Petitioner supervised, weekly, day visits with the subject child. The visits were gradually increased, upon consent of both parties, to supervised, overnight visitation.
In 1999, Petitioner father alleged that the subject child reported inappropriate sexual behavior, specifically that Respondent mother touched the child's penis in a painful manner. The Petitioner reported the incident to ACS. ACS investigated and determined the case to be unfounded.
The visitation deteriorated after Petitioner made the allegations to ACS to the point where the subject child feared Petitioner and resisted having visitation with Petitioner. The child exhibited severe anxiety at the prospect of any visitation with his father.
The child's anxiety was exacerbated by an incident that occurred at a Nathan's restaurant. The child, at an in-camera interview, revealed to the Court that, upon meeting Petitioner father coincidentally at a Nathan's restaurant, Petitioner grabbed the child by the arm and pulled him away from Respondent mother. Petitioner maintains that the child ran freely into his arms. The alleged incident led to the filing of criminal charges against Petitioner for contempt of this Court's Temporary Order of Protection. Those charges were ultimately dismissed.
As a result of this incident, the child's anxiety heightened drastically and he reported to the treating therapist and to the forensic expert that he feared that Petitioner would kidnap him. The child began to display physical symptoms of anxiety such as facial tics and hand tremors. Despite the child's clear aversion to visitation with Petitioner father, Respondent mother continued to comply with all court ordered visitation and with the Court's direction to place the child in counseling.
After numerous court dates and supervised visits with social workers, therapists and psychologists, as well as an in-camera interview with the child, the Court suspended Petitioner's visitation and ordered the child placed in intensive therapy. The ultimate goal of the therapy was to eliminate the child's fear of the Petitioner and to resume visitation once the child was emotionally ready.
[*3]
Unfortunately, the subject child has yet to accept the idea of having a relationship with Petitioner father. The child's treating therapist reported that many attempts were made to engage the child in supervised, therapeutic visitation. As of February 2002, the treating therapist, Robert Terruso, CSW, reported that he had "reached an impasse with [the child] and [felt] that ... efforts to engage him around the visitation issues have been unsuccessful." Over the next year, the child underwent additional therapy with a different therapist, Dr. Vicki Mammano. In October 2003, after five sessions with the child, Dr. Mamanno reported that the subject child " ... is clearly not ready to address any of these issues with his father. He is both too emotionally immature and psychologically fragile to attempt this type of joint therapy [with his father]. ... The multiple attempts that have been made to 'convince [the child]' to see his dad has only served to make [him] feel more anxious, more out of control and more guarded in the therapeutic process." Clearly, the subject child has not responded to therapy as the parties had hoped. His lack of response however, does not relieve Petitioner of his duty to support the subject child.
The Petitioner seeks suspension or termination of child support. Petitioner maintains that Respondent instilled in the child, an irrational fear and hate of Petitioner by indicating to the child that Petitioner caused the problems with ACS and by insisting to the child that Petitioner tried to kidnap him from Nathan's and that he would never see Respondent mother again.
However, while the Petitioner has blamed the mother, the court system and the various therapists who have attempted to help his son, the Petitioner has failed to take responsibility for his own role in alienating his child.
The Court declines to grant Petitioner's motion to suspend and or terminate child support. The Petitioner has failed to show that the Respondent willfully and deliberately alienated the child from the Petitioner.
Parents have an obligation to support their children until the age of twenty one. Family Court Act §413 proscribes that "[t]he parents of a child under the age of twenty-one are chargeable with the support of such child." [*4]See Also, Dom. Rel. §241. However, a child may forfeit the right of support if the child is of employable age and emancipates him or herself by behaving in a manner inconsistent with parental control. Cohen v. Schnepf, 94 A.D.2d 783, (2nd Dep't, 1983) (where the child forfeited right to child support where he rejected visitation, legally changed his surname to his stepfather's surname at the age of eighteen and, in an application for college inserted his stepfather's name under the slot for father's name). See also, Hiross v. Hiross, 224 A.D.2d 662, (2nd Dep't, 1996) (although child refused to speak or visit with father he did not forfeit his right to receive child support).
Generally, "a non-custodial parent should have reasonable rights of visitation, and the denial of those rights to a natural parent is a drastic remedy that should only be invoked when there is substantial evidence that visitation would be detrimental to the child." Vanderhoff v. Vanderhoff, 207 A.D.2d 494, (2nd Dep't, 1994).
However, the court's determination to suspend the non-custodial parent's visitation does not automatically relieve the non-custodial parent of his child support obligations. Only where a custodial parent is directly responsible for the interruption of the non-custodial parent's visitation will child support be suspended or terminated. Family Court Act § 413 states;
[w]hen it appears that a custodial parent has wrongfully interfered with or withheld visitation rights provided by such order, judgment or decree, the court, in its discretion, may suspend such payments during the time that visitation rights have been or are being interfered with or withheld.
Suspension of child support payments is warranted when the custodial parent's interference with visitation rises to the level of "deliberate frustration" or "active interference" with the non-custodial parent's rights. See Hecht v. Hecht, 222 A.D.2d 589 (2nd Dep't, 1999). If the conduct does not rise to level of deliberate frustration or active interference the court will not suspend child support payments. Beal v. Beal, 244 A.D.2d 550 (2nd Dep't, 1997)(father consented to order suspending visitation and, therefore, there was no active interference with right to visitation).
A custodial parent's ambivalence regarding the relationship between the child and the non-custodial parent [*5]does not rise to the level of deliberate frustration. Vanderhoff, Supra, See also, Clum v. Seksinsky,263 A.D.2d 507, (2nd Dep't, 1999, Resnick v. Zoldan, 134 A.D.2d 246 (2nd Dep't, 1987)(where child's reluctance to visit with the non-custodial parent was due in part to the custodial parent's "failure to affirmatively encourage visitation" did not rise to the level of deliberate frustration).
Instances of deliberate frustration and active interference must be extreme to warrant suspension of child support. Alexander v. Alexander,129 A.D.2d 882 (3rd Dep't, 1987). The standard is so high that in many cases, relocation, often an effective means of straining the relationship between child and non-custodial parent, does not necessarily constitute active interference or deliberate frustration.
In Alexander, Supra the custodial parent abruptly moved without the non-custodial parent's knowledge or approval, thus effectively frustrating the visitation rights and actively interfering with the non-custodial parent's right to visitation. Thus, the court found the drastic remedy of suspension or termination of support appropriate.
In Clum v. Seksinsky, Supra, the custodial parent's actions did not constitute active interference or deliberate frustration where the custodial parent notified the non-custodial parent of relocation and allowed the non-custodial parent visitation and phone contact with the child. There, suspension of child support was unwarranted.
Deliberate frustration and active interference that triggers suspension of child support payments is also warranted where the custodial parent actively encourages the child to sever the relationship with the non-custodial parent. Kershaw v. Kershaw, 268 A.D.2d 829, (3rd Dep't, 2000). In Kershaw, the child " ... was not receptive to visitation" due to the custodial parent's direct influence. There, the custodial parent," ... exert[ed] pressure upon the child to forego contact with her father, effectively frustrat[ing] petitioner's visitation rights" and severing the parental relationship which the child wished to and would have otherwise, pursued.
In the instant case, petitioner contends that the court should suspend child support payments due to Respondent's alienation of the child from Petitioner. However, Petitioner fails to specifically allege or make a prima facie showing [*6]that the Respondent's actions caused the child's anxiety and refusal to visit with the Petitioner or in any way caused interference with the relationship between father and child.
Furthermore, the Court finds that Respondent mother's conduct did not frustrate or interfere with the relationship. In fact, the Respondent complied with all court ordered visitation in addition to placing the child in therapy to overcome the child's fear of his father. The record contains significant documentation of visits with which the Respondent complied all the while watching her child deteriorate due to those visits. The Respondent has taken the child to see numerous therapists, social workers and psychologists, some of whom testified at the hearing, over the past six years trying to cultivate the relationship between the child and the Petitioner.
Petitioner also argues that support should be terminated or suspended because Respondent mother has remarried and the child has a close relationship with his step father, who is financially secure and able to provide for the child's needs. This argument is without merit. The financial condition of the child's step-father has no bearing whatsoever on the instant proceedings.
Petitioner further contends that the child support payments should be suspended and or terminated because the child abandoned the parent-child relationship. Petitioner submits that the child willfully refuses to have a relationship with the Petitioner and therefore, the Petitioner is no longer obligated to pay child support. Petitioner's argument is without merit and would further harm any hope of ever re-establishing a relationship between father and son. A young child cannot relinquish their right to child support merely because they refuse to continue visitation with the non-custodial parent. Hiross,Supra. 
The instant case is extremely troubling. Petitioner's frustration is understandable yet, if his intention to someday have meaningful contact with his child is sincere, he must continue to be patient with the child's therapy and resolute in his pursuit of that goal. The subject child cannot be forced to accept a relationship with his father. Further, the child's emotional resistance does not affect his right to receive support from the Petitioner. The hope remains that, as the child matures emotionally, he will eventually want to have a relationship with his father. The Petitioner's [*7]consistent payment of support and pursuit of contact with his child will no doubt weigh heavily in the subject child's future decision to have contact with his father.
The child support Order entered by the Hearing Examiner continues. The Court orders the child to remain in intensive therapy. The child's therapist is to determine if, and at what point, the Petitioner and or Respondent should become involved in the child's therapy.
 This constitutes the Decision and Order of this Court.
__________________________________
Hon. Esther M. Morgenstern, J.F.C.