[886 NYS2d 22]

In the Matter of Thomas B., Respondent, v Lydia D., Appellant.

First Department, October 1, 2009

## APPEARANCES OF COUNSEL

*Peter F. Edelman*, New York City, for appellant.
*Thomas B.*, Sag Harbor, respondent pro se.

## OPINION OF THE COURT

SWEENY, J.

The issue presented is whether, by written agreement, two parents may terminate the child support obligation because of the child's full-time employment without a simultaneous showing of the economic independence of the child. We hold they may not.

Pursuant to a stipulation of settlement entered into as part of the parties' judgment of divorce, petitioner father was obligated to pay annual child support until the parties' child reached the age of 21 or was otherwise "emancipated." The stipulation defined emancipation as, inter alia, "the Child's engaging in fulltime employment; fulltime employment during a scheduled school recess or vacation period shall not, however, be deemed an emancipation event."

A petition for enforcement, dated February 6, 2006, was brought by respondent mother to enforce the child support provision of the stipulation. Petitioner thereafter brought a petition for downward modification, dated November 11, 2006, seeking termination of his child support obligations on the grounds of the child's "emancipation and/or abandonment," retroactive to the date of emancipation. He also sought a refund of any overpayment of child support.

Respondent thereafter moved to dismiss the petition for downward modification, which motion was granted to the extent of dismissing the cause of action alleging abandonment. The court determined that issues of fact remained regarding whether the child was in fact emancipated, and if so, when that event occurred.

Petitioner thereafter moved for summary judgment on the issue of emancipation. He argued that under the terms of the stipulation of settlement, the child became emancipated by reason of his full-time employment at a music store from July through December 2005. He also moved for a suspension of his support obligation, for a refund of any overpayment, retroactive to the date of emancipation, and for dismissal of respondent's enforcement proceeding.

Respondent opposed the motion, arguing that during the time in question, the child was living in a halfway house as part of his treatment for substance abuse. His employment at the music store was one of the conditions of that treatment. She also argued that the child was not economically independent, as he received financial support from her in addition to her payment of 100% of his unreimbursed medical expenses.

The Support Magistrate granted petitioner's motion in toto, finding that the child's full-time employment as of July 2, 2005 was an emancipation event pursuant to the stipulation of settlement, directing the refund of all child support received for the period beginning August 1, 2005, and holding respondent liable for petitioner's counsel fees. Finally, he dismissed respondent's enforcement petition.

In arriving at his decision, the Magistrate stated that "full-time employment" should be given its "common meaning," and that "[w]orking and being compensated for a work schedule that runs from 10:00 a.m. to 5:00 p.m. five days a week with a paid lunch break is a standard thirty-five hour work week which, when worked by an individual, is considered full-time employment."

Respondent filed written objections with Family Court, arguing that the decision regarding both emancipation and retroactive abatement of arrears was contrary to long-established case law. She further argued that the award of attorney's fees was erroneous. The court reinstated the summary judgment motion and petitions and remanded the matter, holding that the Magistrate had not adequately addressed the issue of emancipation, particularly with regard to the issue of whether the parties

intended that the child be economically independent to be considered emancipated. Moreover, the Magistrate was directed to consider the child's status from January 2006, when he ceased working at the music store, through September 25, 2007, the date of his 21st birthday.

In a supplemental decision, the Magistrate additionally held that in the context of child support, it was standard practice for courts to deem an individual a full-time employee when working and being paid for 35 to 40 hours per week. He further found that respondent did not raise a triable issue of fact that the parties intended the child to be economically independent in order to be deemed emancipated. With respect to the period from January 2006 through September 25, 2007, the Magistrate held there would have been a support obligation but for the fact that the occurrence of emancipation resulted in a termination of the support order. As there was no de novo order of support once the child became "re-unemancipated" due to the loss of his full-time employment, petitioner had no obligation to provide support. Finally, he reaffirmed respondent's obligation to refund support payments made after the emancipation event, as well as her obligation to pay petitioner's counsel fees pursuant to the terms of the stipulation of settlement.

Respondent again filed written objections with the Family Court, reiterating her argument that economic independence is a factor that must be considered in determining emancipation. She further contended that no new support application was necessary for the period January 2006 through September 25, 2007.

The court granted the objection in part, accepting the finding that the child was emancipated for the six-month period he worked full time under "the terse language of the 1991 Stipulation." However, the court found the Magistrate erred in determining that the support obligation ended when the child commenced employment July 2, 2005, holding that the support order was merely suspended during the six-month emancipation period and not terminated as of the date of full-time employment. The court held Timothy was entitled to support when he returned to live with respondent on January 1, 2006 through his 21st birthday on September 25, 2007. The Magistrate's decisions were modified to the extent of denying summary judgment and granting respondent's support petition to the extent that petitioner was directed to pay support arrears in the amount of $3,978.18.

A parent's duty to support his or her child to the age of 21 is a matter of fundamental public policy in this state and is cur-

rently embodied in statutory law (Family Ct Act § 413 [1] [a]; *see Matter of Roe v Doe*, 29 NY2d 188, 192-193 [1971]). The concept of parental financial responsibility has its roots in the common law. Initially limited to paternal support to provide "necessaries" for a child, the support obligation was later expanded to include both parents. Professor Merril Sobie points out in Practice Commentaries to Family Court Act § 413 (McKinney's Cons Laws of NY, Book 29A) that Sir William Blackstone's eighteenth century Commentaries on the Laws of England captures the essence of the common-law rule:

> "The duty of parents to provide for the maintenance of their children is a principle of natural law . . . [but the parent] is only obliged to fund them with necessaries . . . for the policy of our laws, which are ever watchful to promote industry, did not mean to compel a father to maintain his idle or lazy children in ease and indolence."

The present support scheme found in section 413 and Domestic Relations Law § 240 is more expansive, and requires both parents to provide for the support of their children in a number of different aspects beyond what would normally be considered "necessaries."

Statutorily, parental child support obligations continue until the child attains the age of 21 (Family Ct Act § 413 [1] [a]), unless the child is sooner emancipated. Emancipation of the child suspends or terminates this duty to support (*Matter of Commissioner of Social Servs. v Jones-Gamble*, 227 AD2d 618 [1996]). The Practice Commentaries for section 413 summarize the case law defining emancipation in these terms:

> "Emancipation is also automatic when the child marries or enlists in the military service. A gainfully employed child who is *fully self-supporting and economically independent* from the parents may also be deemed to be emancipated. Or the parties may provide for emancipation contingencies in a written agreement or stipulation" (emphasis added).

Additionally, a child may self-emancipate prior to age 21 where he or she willingly abandons the parent. This implies that the child has become independent, that he or she has willfully abandoned the parent by refusing to abide by reasonable instructions or demands of the parent, and that such abandonment was not the result of actions on the part of the parent (*see Matter of Roe v Doe*, 29 NY2d 188 [1971], *supra*; *see also Matter of Parker v Stage*, 43 NY2d 128 [1977]).

The issue of emancipation is significant because a finding of emancipation terminates the parental obligation of support (*see Matter of Bailey v Bailey*, 15 AD3d 577 [2005]).

New York courts have repeatedly spoken on the issue of emancipation. "[C]hildren are deemed emancipated if they attain economic independence through employment, entry into military service or marriage and, further, may be deemed constructively emancipated if, without cause, they withdraw from parental supervision and control" (*Matter of Bogin v Goodrich*, 265 AD2d 779, 781 [1999]).

As to the whether this child was emancipated, a review of the cases that have addressed this issue shows each one using the child's "economic independence" as the test (*see e.g. id.*; *Matter of Alice C. v Bernard G.C.*, 193 AD2d 97, 105 [1993]).

In *Matter of Fortunato v Fortunato* (242 AD2d 720, 721 [1997]), the court affirmed the finding of emancipation where the record reflected that the child was economically independent because he was

> "working an average of 30 to 35 hours per week. . . [,] he used his earnings to meet all of his personal expenses, including car insurance payments and telephone charges, and . . . he voluntarily contributed modest sums to his mother for room and board. Moreover, the son was not attending school, and had no plans to save money for tuition or return to college in the immediate future."

The fact that the child in *Fortunato* was not only meeting all of his expenses but also contributing money to his mother for his room and board demonstrated the economic independence required by case law. In contrast stands *Matter of Bogin v Goodrich* (*supra*), where the child was employed, occasionally full time, during the period she was allegedly emancipated. She had no plans to attend college. The court found she was not economically independent, and hence not emancipated, since the evidence demonstrated that her mother paid for her food, clothing and miscellaneous expenses during that period, in addition to providing her with a place to live and paying for utilities.

The determination of economic independence necessarily involves a fact-specific inquiry. Thus, even where a child is working but still relies on a parent for significant economic support such as paying for utilities, food, car insurance, medical insurance and the like, the child cannot be considered economically

independent, and thus is not emancipated (*see e.g. Matter of Fisher v Fritzsch*, 35 AD3d 1146, 1148 [2006], *lv denied* 8 NY3d 810 [2007]; *Matter of Reigada v Rinker*, 30 AD3d 716, 717 [2006]; *Matter of Holscher v Holscher*, 4 AD3d 629, 630 [2004], *lv denied* 3 NY3d 606 [2004]; *Matter of Bogin*, 265 AD2d at 781; *Matter of Alice C.*, 193 AD2d at 105-106). This is true even where the child is residing with neither of the parties, so long as the child is still dependent on one of the parties for a significant portion of his or her support. In *Matter of Cellamare v Lakeman* (36 AD3d 906 [2007], *appeal dismissed* 8 NY3d 975 [2007]), the petitioner mother argued that the child was working full time, living with neither of the parties, and hence was emancipated. However, the respondent father testified that he provided the child with food, that the child still received mail at the respondent's house, had his own telephone line at the house, and was covered by the respondent's medical insurance. The court found that the child was not economically independent, and hence not emancipated.

Moreover, the parties cannot contract away the duty of child support. "Despite the fact that a separation agreement is 'entitled to the solemnity and obligation of a contract, when children's rights are involved the contract yields to the welfare of the children'" (*Pecora v Cerillo*, 207 AD2d 215, 218 [1995], quoting *Maki v Straub*, 167 AD2d 589, 590 [1990], *lv denied* 78 NY2d 854 [1991], *appeal dismissed* 78 NY2d 951 [1991]). The duty of a parent to support his or her child "shall not be eliminated or diminished by the terms of a separation agreement" (*Pecora* at 218), nor can it be abrogated by contract (*Cellamare*, 36 AD3d at 906).

Here, on the issue of whether the child was economically independent of his parents as a result of his working 35 hours per week while living in a halfway house and not attending school, we find insufficient evidence in the record to justify a finding that he was self-supporting. First of all, it is uncontroverted that the child's employment was one of the requirements of participation in the halfway house substance abuse program. Moreover, the following testimony was elicited at the child's deposition concerning his support:

"Q. How else were you supporting yourself?

"A. My mother was supporting me and, you know, I also was living at the halfway house and I was sort of—part of the agreement that you had to get a job

and stuff and by doing that, you know, certain expenses at the halfway house were taken care of.

"Q. By who?

"A. By my mom and by the guy who ran the halfway house."

Elsewhere, this exchange took place:

"Q. Who paid for the apartment?

"A. My mother assisted and the Whitney Trust Fund as well."

Additionally, it is not controverted that respondent paid all of the child's unreimbursed medical expenses and provided other support for him both before, during and after his employment and residence at the halfway house. In fact, the child returned to reside with respondent and testified at his deposition that he stored his property at respondent's residence. Although respondent did not provide a detailed list of expenses she paid on her son's behalf, it is clear that her support was necessary, and that as a result, the evidence did not show he was "economically independent" of his parents.

Although petitioner relies on the definition of emancipation in the separation agreement that he drafted to support his claim, the agreement purports to do exactly what is prohibited by public policy and case law. Economic independence from the child's parents is not established by merely working a standard, full-time work week.

It is thus clear that although he was working 35 hours per week during the period of time in question, the child was not economically independent of his parents, and thus was not emancipated during that period of time.

On the question of attorney's fees, both parties on this appeal claim to be entitled to such fees and costs pursuant to section 15.06 of the stipulation, which provides:

"Notwithstanding anything in this Stipulation to the contrary, in the event that either Party shall default in any of his or her obligations under this Stipulation, or if he or she shall challenge unsuccessfully the validity of any part of this Stipulation, then that Party shall be liable for the cost and expenses of the other Party as a result thereof, including, but not limited to, reasonable attorney's fees

incurred in enforcement of any such default or defense to such challenge. In any other case, each Party shall be responsible for only his or her own costs and expenses in connection with prosecuting or defending any other action brought under the terms of this Stipulation."

In light of our decision, respondent is entitled to attorney's fees and we accordingly remand for a hearing to determine the amount of those fees.

Additionally, since we have determined that the parties' child was not emancipated during the period from July through December 2005, the calculation of arrears made by the court below is incorrect. Accordingly, we further remand for a recalculation of arrears.

Accordingly, the order of the Family Court, New York County (Gloria Sosa-Lintner, J.), entered on or about May 2, 2008, insofar as it denied respondent mother's objection to the Support Magistrate's finding that the parties' son was emancipated for the six-month period from July 2 through December 31, 2005, abated the child support for said period and fixed child support arrears at $3,978.18, and order, same court (Nicholas J. Palos, S.M.), entered on or about May 30, 2008, insofar as it awarded those arrears and terminated the child support provision of the divorce judgment as of September 26, 2007, should be reversed, on the law and the facts, without costs, the objections sustained, the support arrears vacated and the matter remanded for a hearing to determine the amount of support arrears and counsel fees pursuant to the terms of the stipulation of settlement incorporated but not merged in the parties' judgment of divorce.

SAXE, J.P., MOSKOWITZ, ACOSTA and RICHTER, JJ., concur.

Order, Family Court, New York County, entered on or about May 2, 2008, and order, same court, entered on or about May 30, 2008, reversed, on the law and the facts, without costs, the objections sustained, the support arrears vacated and the matter remanded for a hearing to determine the amount of support arrears and counsel fees pursuant to the terms of the stipulation of settlement incorporated but not merged in the parties' judgment of divorce.