In the Matter of Glen L.S., Respondent, v Deborah A.S., Appellant. (Proceeding No. 1.) In the Matter of Deborah A.S., Appellant, v Glen L.S., Respondent. (Proceeding No. 2.) [932 NYS2d 177]—

"It is fundamental public policy in New York that parents are responsible for their children's support until age 21" (*Matter of Gold v Fisher*, 59 AD3d 443, 444 [2009]; *see* Family Ct Act § 413; *Matter of Roe v Doe*, 29 NY2d 188, 192-193 [1971]). Nevertheless, under the doctrine of constructive emancipation, where "a minor of employable age and in full possession of [his or] her faculties, voluntarily and without cause, abandons the parent's home, against the will of the parent and for the purpose of avoiding parental control [he or] she forfeits [his or] her right to demand support" (*Matter of Roe v Doe*, 29 NY2d at 192; *see Matter of DeLuca v Strear-DeLuca*, 84 AD3d 801, 801 [2011]; Family Ct Act § 413). "In contrast, where it is the parent who causes a breakdown in communication with his [or her] child, or has made no serious effort to contact the child and exercise his [or her] visitation rights, the child will not be deemed to have abandoned the parent" (*Matter of Alice C. v Bernard G.C.*, 193 AD2d 97, 109 [1993]; *see Matter of Gold v Fisher*, 59 AD3d at 444). " 'The burden of proof as to emancipation is on the party asserting it' " (*Matter of Gold v Fisher*, 59 AD3d at 444, quoting *Schneider v Schneider*, 116 AD2d 714, 715 [1986]; *see Matter of DeLuca v Strear-DeLuca*, 84 AD3d 801 [2011]).

Although the Family Court is in the best position to assess the credibility of the witnesses (*see Matter of Commissioner of Social Servs. v Jones-Gamble*, 227 AD2d 618, 619 [1996]), here, there is an insufficient basis in the record to support the Family Court's determination that the parties' son unjustifiably refused contact and visitation with his father.

The testimony elicited at the hearing established the father's claim that his son chose not to speak with him on the telephone and did not return his text messages following an altercation between the two in February 2008. However, the evidence also revealed that the altercation between the two prompted the son to state that "he wanted to commit suicide" and resulted in therapeutic intervention. Based on these mental health concerns, the son, via his mother, requested that the father not contact him so that he could "sort out" the issues, indicating a temporary reluctance on the son's part to contact the father.

The father acknowledged that he made no effort to enforce visitation with the assistance of the court. The father made no efforts to contact the son through the school other than one telephone call to a guidance counselor, and admittedly never attempted to visit the son at his mother's home after the incident. Indeed, all attempts at communication by the father ceased in October 2009, eight months after the incident. The father made no attempts to contact his son during his senior year of high school and made no effort to discuss or gain information regarding the son's college plans. In June 2009, having rented out a portion of his house, the father removed the son's belongings from his home and dropped them off at the mother's home with an e-mail communicating, in effect, that the door was open for the son to come to him "[i]f eventually he can work his issues out and feels he needs the other part of his family." However, shortly thereafter, the father refused an invitation to his son's high school graduation and failed to acknowledge or congratulate his son upon graduation in any manner. While the father sent a birthday card to his son without response in 2008, the father also failed to respond to an Easter card sent to him by his son in 2010.

The totality of the father's efforts to establish a relationship with his son, over a period of several months, cannot be deemed a serious effort that was in turn egregiously rejected by the son. "A child's reluctance to see a parent is not abandonment, relieving the parent of any support obligation" (*Radin v Radin*, 209 AD2d 396, 396 [1994]; *see Matter of Turnow v Stabile*, 84 AD3d 1385 [2011]; *Matter of Dewitt v Giampietro*, 66 AD3d 773 [2009]). Rather, the doctrine of constructive emancipation is applicable to situations where the child refuses to submit to the authority and control of the noncustodial paying parent or "actively abandons the noncustodial parent by refusing all contact and visitation" (*Matter of Alice C. v Bernard G.C.*, 193 AD2d at 109; *see Cohen v Schnepf*, 94 AD2d 783 [1983]).

A review of the facts here shows that the father contributed to the deterioration of his relationship with his son (*see Kordes v Kordes*, 70 AD3d 782 [2010]; *Matter of Alice C. v Bernard G.C.*, 193 AD2d 97 [1993]). Indeed, the record demonstrates that the father's own behavior was the parallel and coequal cause of the deterioration in the relationship. Accordingly, the father failed to meet his burden of establishing that his son was constructively emancipated (*see Matter of Turnow v Stabile*, 84 AD3d 1385 [2011]; *Matter of Burr v Fellner*, 73 AD3d 1041 [2010]; *Matter of Dewitt v Giampietro*, 66 AD3d 773 [2009]; *Radin v Radin*, 209 AD2d 396 [1994]).

Accordingly, the Family Court should not have granted the father's petition to vacate the child support provisions of the parties' stipulation of settlement, which was incorporated but not merged into the judgment of divorce entered September 13, 1996.

The mother's remaining contentions either are without merit or need not be addressed in light of our determination. Florio, J.P., Dickerson, Chambers and Cohen, JJ., concur.